# THE CITY OF CHICAGO

## *v.*

## JOHN F. STARR, Administrator.

1. COMPARATIVE NEGLIGENCE — *dangerous obstructions to streets — children playing at large.* A heavy counter, some eighteen feet long and three feet high, was placed on the sidewalk in one of the principal thoroughfares in the city of Chicago, by some individual, without authority from the city ; the counter was leaned against a fence which bordered the walk, with its open side toward it, and the bottom standing twelve or eighteen inches out from the fence. The counter had remained in that situation two or three weeks, when some children were climbing upon or about it, and thereby caused it to fall over and kill one of them. The child who was killed was six years old, and had frequently been upon the streets in the most crowded parts of the city, sometimes alone and sometimes with other children, and, at the time of the accident, was six blocks from home. In an action under the statute, against the city, to recover damages on account of the death of the child, caused by the alleged negligence of the city in permitting the counter to remain in so dangerous a position, it was *held,* there was negligence on both sides — on the part of the city, in allowing the counter to remain in that situation, and on the part of the parents of the child, in permitting him, at his age, to roam the crowded thoroughfares of the city, at such a distance from his home. But the negligence on the part of the city was not only not more, but was even less than that attributable to the parents of the child.

2. In estimating the degree of carelessness with which the city is chargeable in such a case, the character of the obstruction is to be considered with reference to the proper uses of the street as a thoroughfare of travel, and not

as a play-ground for children ; and whether prudent persons would regard it as dangerous.   The degree of carelessness is not to be judged from a single fatal accident.   In deciding upon the question of comparative negligence, all these matters are to be taken into consideration.

APPEAL from the Circuit Court of Cook County ; the Hon. E. S. WILLIAMS, Judge, presiding.

The case is stated in the opinion of the court.

Mr. S. A. IRVIN and Mr. D. D. DRISCOLL, for the appellant.

Mr. C. W. COLEHOUR and Mr. WM. K. MCALLISTER, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This is an action on the case, brought under the statute, by the administrator of a child named Geoseppi Fassetti, against the city of Chicago, upon the following state of facts : It appears, that, in July, 1865, several young children were at play on the sidewalk on the north side of Randolph street, between Wabash avenue and State street.   There was at the time, and had been for between two and three weeks, a counter standing on the sidewalk and leaning against the board fence which bordered the walk.   The counter is described by witnesses as a pine-panel counter, with a black walnut top and cornice, about eighteen feet long and three feet high, leaning against the fence, with its open side toward it, and the bottom standing twelve or eighteen inches out from the fence.   While the children were at play, the counter fell over and killed the child Fassetti.   The obvious inference from the evidence is, that the children were climbing upon or about the counter, and thereby caused its fall.   No other mode of explaining the fall is suggested.   The child killed was six years old.   This suit is brought to recover damages for his death, and the jury found a verdict for the plaintiff for fourteen hundred dollars, upon which the court gave judgment, and the city appealed.

It is contended, on behalf of the city, that the negligence of the parents, in permitting this young child to roam the streets

unprotected, was at least equal to that of the city, in not having caused the removal of the counter which had been placed there without its authority. At least, it appears to have been placed there by private individuals, and no authority from the city is claimed. It is also shown, that the place where the accident occurred was six blocks from the home of the child, and one of the witnesses speaks of having seen the child near the Briggs House, sometimes alone and sometimes with other children. On the other hand, it is contended, that there was no negligence on the part of the child's parents, and that the child had a right to be in the streets, in support of which position the decision of this court, in *The City of Chicago* v. *Major*, 18 Ill. 360, is cited. There is but little resemblance between that case and the one at bar, except in the fact, that both were brought to recover damages for the death of a child through an accident upon the street. In that case, the city had constructed, at the border of the sidewalk, a tank or cistern to collect water for the fire engines, and had allowed the tank to remain for a considerable period partially uncovered, with water in it to the depth of fifteen feet. The child of the plaintiff fell through the hole in the tank, and was drowned. The tank was two or three hundred feet from the child's home. In delivering their opinion the court say: " A large majority of children living in cities depend on the daily labor of both parents for subsistence, and these parents are unable to employ nurses who can keep a constant and vigilant eye momentarily upon their children; and we cannot hold, as a matter of law, that every time a child four years of age steps into the street, unattended, the mother is guilty of such negligence as would authorize every reckless or careless driver to run over and trample it down with impunity, or as would authorize the city to expose traps and pitfalls in every corner of the streets, in which a child may be drowned or maimed." We agree with every word of this, and it was very applicable to that case. Neither do we regard the correctness of the decision in that case as open to criticism, for whatever negligence there may have been on the part of the parents in suffering the child to wander two or three hundred

feet from home, in what is shown by the proof to have been a comparatively retired part of the city, it was as nothing in comparison with the reckless carelessness of the city, in leaving this cistern with a hole in it large enough for a child to fall through, erecting, in the language of the court, a "trap and pitfall at the corner of the streets."

But when we examine the case at bar, we find the carelessness of the child's parents much greater and that of the city much less. This child, in the present case, was suffered by his parents to be at play six blocks from home, in a crowded thoroughfare. He had been seen at other times roaming the streets, sometimes alone and sometimes with other children. That it was carelessness of no slight degree to permit this child of six years thus to wander over the streets of a crowded city, is a proposition which admits neither of debate nor doubt. It may be that the parents had not the means of providing a nurse, but, if an attendant could not be furnished for the child, it might at least have been kept in the immediate neighborhood of its mother's home. This was not only possible, but it was the duty of the parents to place this degree of restraint upon the child for reasons pertaining to its moral as well as physical well-being. On the other hand, the negligence of the city, in reference to this accident, cannot be considered extreme. It would be a great misuse of terms to call it gross. For it is to be borne in mind, that it is not the duty of the city of Chicago to make its streets a safe play-ground for children. That is not the purpose for which the streets are designed. Undoubtedly, if a child, at play upon the sidewalk, should fall through a hole or into a cistern which the city had allowed to remain open, this would be such carelessness as properly to require the city to respond in damages. Such carelessness would endanger the life and limb of every passer-by. But, in estimating the degree of carelessness with which the city is chargeable in all cases of this sort, the character of the obstruction is to be considered with reference to the proper uses of the street as a thoroughfare of travel, and not as a place for the recreation of children. There might have been great carelessness in leaving

12 — 42D ILL.

this counter thus standing in the play-ground of a school, but the question is, what was the degree of carelessness in leaving it upon the sidewalk in reference to the ordinary uses of the street? The sidewalk was fourteen feet wide, and the counter covered three feet of this width. This was undoubtedly, in some degree, an obstruction, and a person falling over it, unseen, in the night, in passing along the street, and suffering an injury, would undoubtedly have been entitled to his action. If the counter were invisible in the darkness, there would, in such an accident, be no question of comparative negligence, for the passer-by would be guilty of none. But while this counter was an obstruction, it was certainly but a very slight one, to the use of the sidewalk, for the purposes of passage, and one which might continue on the street for a very long period, without injury or even serious inconvenience to persons going to and fro. During the two or three weeks it remained upon the sidewalk, it probably never occurred to any one who saw it, that human life or limb would be jeopardized by its presence there. It had not been placed there by leave of the city, and it is not claimed that it was ever brought to the notice of the city officials, except as some of them may have had the opportunity of observing it in passing along the street. The most prudent and cautious person would not have anticipated such an accident as really happened, or have regarded the counter as in anywise a source of danger. In deciding this question of comparative negligence, these are all considerations not to be overlooked, and weighing them on the one side, and the carelessness of the parents on the other, we cannot resist the conclusion, that there was negligence on both sides, and that there was not such a marked difference in degree as to justify a verdict for the plaintiff. The degree of carelessness, it is to be remembered, is not to be judged, in cases of this sort, from one single fatal accident, a consideration which juries are very liable to overlook. The question is, rather, what would have been the course of a prudent person prior to the accident? What would a prudent person have thought of the liability to cause an injury? And, viewing it from this point, we are of opinion

that the negligence on the part of the city was not only not more, but was even less, than that fairly attributable to the parents of the child. The motion for a new trial should have been allowed.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*