## THE CITY OF EL PASO ET AL.
### v.
### AARON CAUSEY.

1. CITIES—CARE REQUIRED IN CONSTRUCTING SIDEWALKS.—Cities are not insurers against accidents, nor are they required to so construct their sidewalks as to secure immunity from injury when used, but they fulfill their duty to the public in that regard when such walks are reasonably safe for persons exercising ordinary care and caution when using them.

2. LIABILITY BY REASON OF PART OWNERSHIP OF BUILDING.—It appeared that in the construction of the building where appellee was injured, the city, desiring a hall for its use, entered into an arrangement with the owners of the land, whereby the city, with others, was to complete the upper story of the building, keep the same in repair, and was then to be a part owner of such upper story. There was no proof that the city had any interest in the land on which the building stood, or in the lower story, or any control over the building of the basement where the injury happened. *Held*, no liability attached to the city on the ground of ownership.

3. LIABILITY OF CITY FOR PERMITTING STAIRWAYS IN STREETS.—In considering the degree of negligence properly attributable to a city in allowing the construction of stairways as entrances to basements from the street, it is not to be judged of from the fact of one accident, but rather what would have been the course of prudent persons prior to the accident. Would it be considered that the sidewalk was unsafe by reason of such entrance? And, considering the character of the entrance with reference to the use of the street as a public way, would it be considered as likely to cause an injury?

4. BURDEN OF PROOF.—In cases of this character, the burden of proof is upon the plaintiff to show, not only that the defendants were negligent, but that at the time of the injury he was in the exercise of due care for his personal safety.

APPEAL from the Circuit Court of Woodford county ; the Hon. JOHN BURNS, Judge, presiding.

Messrs. HOPKINS & MORRON and Messrs. CHITTY, CASSELL & GIBSON, for appellant ; that the material allegations of the declaration are not sustained by the evidence, cited city of Aurora v. Pulfer, 56 Ill. 270 ; city of Centralia v. Krouse, 64 Ill. 19; Chicago v. McGiven, 78 Ill. 347; Quincy v. Barker, 81 Ill. 300; Lovenguth v. City of Bloomington, 71 Ill. 238; Village of Kewanee v. Depew, 80 Ill. 119; C. B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510.

Messrs. BANGS, SHAW & EDWARDS, for appellee; in support of the judgment below, cited City of Galesburg v. Higley, 61 Ill. 287; Chicago v. Hislop, 61 Ill. 86; Chicago v. Langlass, 52 Ill. 256; Chicago v. Langlass, 66 Ill. 361; Chicago v. Wright, 68 Ill. 586; Joilet v. Verley, 35 Ill. 58; City of Sterling v. Thomas, 60 Ill. 264; Chicago v. Gallagher, 44 Ill. 295; Bacon v. Boston, 3 Cush. 174.

PILLSBURY, J.   In 1872, Shur Tompkins & Co. erected a three-story brick building, with basement, on the southeast corner of block forty-two, in El Paso. The building extends about one hundred feet on each street: Front street on the South and Central street on the east.

The corner room was occupied by Shur Tompkins & Company as a bank; the next west, by Young & Tompkins as a dry goods store, then Tobias & Son, grocers, and the west one, by W. A. Johnson, hardware dealer. Under each of these rooms was a basement, used for business purposes, eight feet deep below the level of the sidewalk. The entrance to the basement under the store of Young & Tompkins was by a flight of steps commencing at the edge of the stone-flagging constituting the sidewalk and running at right angles therewith directly to the door of the basement. The north line of the stone pavement was four inches north of the line of the street and the south wall of the building was four feet from the north line of street.

This space between the sidewalk and building was excavated to the depth of the basement along the entire south front of the building, making an area about three feet eight inches wide. Protecting this area was an iron fence over three feet high, extending from the door of the bank to the east line of the basement stairs, where it was connected with a newel-post, eight inches in diameter, standing six inches from the inner edge of the sidewalk. The entrance to the basement was six feet in width and under the east window of the store. The entrance to the store was by a double door in a recess four feet deep, the sides of which recess were glass. An iron platform raised one step, and four and one half feet long, leads over the area from the pavement to the front door step. On each side of this

platform was the *terra cotta* figure of a lion, about four feet high, and extending from the building to line of railing. From the west side of the store entrance the iron railing extends to the next entrance. The sidewalk was ten feet in width, made of Joliet flag-stone, jointed and hammered.

The front windows of the store were each four feet four inches in width and eleven feet high, and containing three panes of glass each.

The proof is full and complete in this record that the sidewalk area, entrances to basement and the stores, and the railing along the area, were constructed in the very safest manner known to practical architects, and equal to any in the largest cities of this country, and that they were at the time of injury to the appellee, in the best repair.

On the first day of November, 1875, the appellee Causey, was passing along the sidewalk from the east, with the intention of going into the store of Young & Tompkins to see a friend, and, as he says, mistaking the east window of the building for the door, he turned to the right around the newel-post and stepped off the sidewalk into the cellar-way, injuring himself quite seriously.

He brought this suit against Young & Tompkins and the city to recover damages for such injury. He claims, as one ground of recovery against the city, that the city was joint-owner of the building, and, therefore, liable, in that capacity for the excavation and the construction of the area and stairs.

It appears from the record that the city and some Masonic bodies desired to have halls in the upper story of the building for their respective uses, and an arrangement was made by which Shur Tompkins & Company, and P. H. Tompkins, would erect the building to the centre of the joists of the second floor, and the city and Masons were to complete the upper story and build the stairs leading thereto, put on the roof and keep the same in repair, and were then to be the owners of such upper story. There is no proof that the city had any interest in the land or the store-rooms, or any control over the building of the basement or the lower stories, as proprietor or part

owner.   We are all of the opinion that no liability attached to the city on the ground of ownership.

Does the case then show such negligence on the part of appellants as will render them liable for the injury sustained by appellee, under all the evidence in this record?   It is a matter of common observation, that in all our cities business blocks are built with basements below the level of the sidewalk, and frequently such basements are most valuable for business purposes, and it is not only convenient, but absolutely necessary, that entrances should be had to the same from the street, in order to be available; and such entrances have ever been permitted by the authorities of all cities; and experience has shown that when properly constructed, so as not to encroach upon the traveled way, it is very rarely the case that one is injured therefrom.

In considering the degree of carelessness properly attributable to a city in allowing these entrances to private property from the street, we are not to judge of it from the fact of one accident, but rather what would have been the course of prudent persons prior to the accident.   Would such a person consider that the sidewalk was unsafe to travel by reason of such entrance?   Would a prudent man, considering the character of the entrance with reference to the use of the street as a public way for travel, come to the conclusion that such entrance was likely to cause an injury?   Chicago v. Starr, 42 Ill. 174.

These are questions that should be calmly and without prejudice considered by the jury in determining whether the city is properly chargeable with negligence, and the degree thereof.   Ibid.

The burden of proof in this case is upon the plaintiff to prove to the court and jury not only, that the defendants below were negligent, but that at the time of the injury he was in the exercise of due care for his personal safety.

The evidence shows that this accident occurred in the early part of the evening when the lights were burning in the store of Young & Tompkins as usual, and appellee testified that the light from the window " struck me in the face and I stepped right down the cellar-way," and " I supposed I was in front of

the store door, and turned to go in and found I had mistaken the window for the door, and stepped into the cellar-way."

It is hard to understand how a reasonably prudent man in possession of all his faculties could, in passing along a stone pavement ten feet wide, with all the lights from the store shining through the doors and windows, mistake a window in full view, and of the size of this, for the entrance to a store door materially different in size, appearance and construction and protected by figures nearly four feet high.

The appellee was well acquainted with the sidewalk entrance to the store and to the basement; besides he knew where he was going, and the way to properly go there, and there is no doubt had he paid the least attention to his footsteps, he would not have stepped down a flight of stairs, when he should have done exactly the contrary in order to reach the raised iron platform leading across the area to the store entrance, especially, when, as the proof clearly shows in this case that at the time of the injury the light was so shining upon the stairs, that the first two steps were plainly to be seen from the sidewalk. The circumstances in proof, instead of showing that the appellee was exercising due care for his personal safety, forces upon the mind a conclusion exactly the reverse.

We are not left, however, upon this point, to the inferences from the circumstance alone, for it is in evidence that appellee told various parties that his injury was the result of his own carelessness. Dr. Adams testified, that on the 18th of February, after the injury, Causey came into his office and gave him a history of his injury and detailed the circumstances: "Said he mistook the window for the door, while his attention was being directed some other way; saw the brilliant light and thought it was the door; stated what attracted his attention, and, from my best recollection, he said it was a train that was passing at the time; might have been something else." William Tucker swears "that the first time I saw Causey after the accident was when he first got about from his injuries; met him on the platform of the I. P. & W. R'y, at El Paso; the train from Peoria was just in; shook hands and asked him how he was getting along; spoke

of his injury and he said it was of his own carelessness that he got hurt; said he was not paying attention to where he was going, but was looking back."

Hannah King says: " That night heard Causey say that he carelessly walked into the stairway; said he saw the light in the window, and thought it was the door and started for it; he said: ' What will my poor wife and children do? I was so careless as to fall down there; don't know why I did such a foolish thing.' " W. A. Johnson says "that at the time Causey fell in the stairway it was light enough so I could see the lions, the newel-post, the hand-rail, the top-rail, the two top steps and the third not so plainly, and could see Causey's feet on, probably, the fourth step. It was light enough on the pavement and the top step so any person could readily distinguish the entrance. When I brought him out of the stairway, saw no indication that he was not in his right mind. Shortly after we placed him on the lounge, he stated that it was by his own carelessness that he fell. Said ' Oh, how careless I was; ' think he used this language twice."

H. C. Hubbard says: " On the night he was hurt, I heard him remark once or twice, ' Oh! how careless a man can be;' heard him make the same remark next day, in Peoria."

Jacob Zaines testified that the night he was injured he heard him say it was by his own carelessness that he fell into the basement.

W. R. Willis says he met Causey next spring in El Paso. In conversation with him, he said: " It was my own carelessness." I said: " You were acquainted with the entrance; I am astonished at it, you knowing the situation so well." He said: " It was sheer carelessness in me."

P. A. Simmons and Robert Robinson also testify to same statements of appellee.

These are the statements of disinterested witnesses, and we have no hesitation in giving them the fullest credit, notwithstanding the partial denial of appellee.

We can believe from this positive evidence, in connection with all the other facts and circumstances in proof, that the carelessness of appellee was so great that his injury is directly

chargeable to it rather than to the negligence of appellants.

Cities are not insurers against accidents, nor are they required to so construct their sidewalks as to secure immunity from injury when used, but they fulfill their duty to the public in that regard when their walks are reasonably safe for persons exercising ordinary care and caution when using them. City of Chicago v. McGiven, 78 Ill. 347.

This sidewalk and basement entrance was constructed in the best possible manner, and equal to any in the largest cities; the walk was ten feet wide, even and smooth, and amply safe for any person who was not reckless regarding his own safety. We are of the opinion that the appellee cannot recover upon the case made in this record. He has only his own negligence to blame for his injury.

The judgment must be reversed and cause remanded.

Judgment reversed.