## CITY OF MENARD v. COATS.
### No. 4047.

Court of Civil Appeals of Texas. Amarillo.
May 24, 1933.

Frank Hartgraves and Joe P. Flack, both of Menard, for appellant.

Frank C. Dickey, of Ballinger, for appellee.

HALL, Chief Justice.

The appellee, a minor, by his mother as next friend, filed this suit against the city of Menard and the Menard Irrigation Company to recover damages which it is alleged the plaintiff sustained in an irrigation ditch near the courthouse in the city of Menard.

The facts are, briefly stated, that the irrigation company had a canal about eighteen feet wide and about five feet deep which ran through the city of Menard and through the courthouse square. Some one had created a park there and as part of the improvements had erected a large water wheel about twenty feet in diameter, which was made to revolve by the water flowing against flanges or projections placed at intervals around the circumference of the wheel. It is alleged that both defendants had allowed small children to bathe and swim in the irrigation canal and knew that they were doing so; that the city supervised and controlled the property as a park and a public resort; that the wheel was "an inherent dangerous device and structure and was calculated to and did result in the injury herein complained of. That the wheel was unguarded and unprotected by any railing or other bar, the water flowed swiftly under it and children swimming in the stream were reasonably calculated to be carried beneath the wheel by the current. That on the occasion in question the plaintiff, who was then less than ten years of age, was caught under one of the flanges or projections and was crushed against the bottom of the canal." The petition further sets out in detail the injury sustained, the extent of his lacerations, the employment of a physician, and the expenses incident to his sickness and treatment. Plaintiff then charges that the irrigation company was guilty of negligence in that they built, maintained, owned, possessed, and controlled the ditch and knowingly permitted plaintiff and other children to use the same as a bathing pool; that they permitted the water wheel to be placed in said ditch and failed to build and construct guards and brakes in front of the wheel up-

stream from the same so as to prevent children from being caught in the wheel.

The negligence of the city as charged is that its agents and employees built and contributed to the building and caused to be constructed and maintained said water wheel in the position and condition aforementioned and failed to build and construct guards and safety devices upstream to prevent children from being caught under the wheel; that they failed to maintain the premises and the structure in a safe condition; and that the negligence of each was the proximate cause of the injury. He alleges he suffered damages in the sum of $25,000.

The defendants filed separate answers.

The city answered by general demurrer and special exceptions and alleged: That it had no control over the land through which the ditch ran, but that the land belonged to Menard county. The county maintained a park and employed a keeper and directed him in his work and the city had no authority over the keeper, either to hire or discharge him or to direct the work in any way. That the city received no income from the park, but that it was owned and controlled by the county authorities. That the city did not own or control the ditch running through the courthouse yard; that it did not erect or assist in erecting the water wheel and did not maintain the same nor did it consent to the wheel being placed where it was and had no right to demand that it be removed. That the wheel was erected at the cost of Menard county alone. That the plaintiff, J. F. Coats, Jr., was ten years of age at the time he was alleged to have been injured and was a healthy, robust, active boy, accustomed to playing all kinds of games and swimming, was well acquainted with the water wheel in the ditch, and aware of the danger of being caught under it. That at that age and that time he was sui juris and in going into the canal above the wheel he was guilty of contributory negligence.

The irrigation company answered by general demurrer and several special exceptions and alleged that the courthouse yard was the property of Menard county; that the only interest it had was an easement or license acquired by prescription from the county for the purpose of running water across the land for irrigation purposes only; that it had no deed to the property and no right to prevent Menard county from erecting bridges or other structures in, along, or across the ditch, so long as such structures did not materially interfere with the flow of the water; that the county officials of Menard county erected said wheel in the ditch at the cost of the county and that the irrigation company derived no benefit or revenue therefrom; that the county had for a number of years maintained a lawn or yard in connection with its courthouse grounds and had built various bridges and other structures, including the water wheel, for the purpose of beautifying the park and making it more serviceable and attractive; that the irrigation company had no part in any of said work and did not own or maintain the park.

There was a trial to the court without a jury, resulting in a judgment that the plaintiff recover of the city of Menard the sum of $250 and denying a recovery against the irrigation company. Both the plaintiff and the city of Menard excepted and gave notice of appeal, but the city alone has brought the case to the appellate court for review.

The material facts, as shown by the statement of facts, are, in substance as follows:

The boy who was injured was nearly ten years of age at the time of his injury. His statement shows that he was, with other boys, bathing in the irrigation canal upstream from where the wheel was situated: that there was a bridge and a sidewalk across the canal about twelve or fifteen feet upstream from where the wheel was located and also a bridge across the stream west of the first mentioned bridge. He says that there was quite a lot of bathing done in the stream where it ran through the park, but they usually went in bathing on the east side down the stream from the wheel because the water there was deep enough to dive in and that very little swimming was done in the stream above the wheel. He further says: "I never did climb on the wheel because I knew that I might fall off and get under it. There was a concrete wall and bottom to the ditch just above and under the wheel and I knew that the wheel was dangerous and knew that if I got in the stream immediately above the wheel I was liable to be washed under the wheel and hurt. We had been up the stream and had floated down under the bridge and got up to get out of the ditch before reaching the wheel and as I climbed out my foot slipped on the bank and I fell back and the wheel caught me."

According to the testimony of county and city officials, children had been swimming and bathing in the ditch for a good many years prior to the time the wheel was constructed; that there was less bathing on the west side of the park where the wheel was placed, most of the swimming being on the east side of the park. It was shown that the irrigation company had nothing to do with the erection of the wheel, paid nothing towards its construction, and did not formally grant permission for it to be placed in the ditch. The ditch was part of the main canal system. The county, of course, owned the courthouse square which had been converted into a park and had been used by the citizens for parking purposes, marketing produce, hitching teams, swapping horses, etc., long before the city was incorporated and the

park was still under the control and management of the county.

County Judge Matthews testified that the courthouse square which he designated as Legion Park, was a part of the county courthouse grounds and was under the management and control of the county; that the city had nothing to do with its control and management; that the county had the water wheel put in the ditch and paid the expenses and that neither the irrigation company nor the city had anything to do with its installation; that the city paid a small sum per month to the keeper of the park and grounds, who was also the janitor of the courthouse; that he was hired and discharged by the county at will and the county directed him in his work; that the irrigation company did not control that part of the ditch which ran through the courthouse ground; that the county maintained the grounds for the convenience of the inhabitants of the county generally and had been doing so for more than fifty years before the city was incorporated.

This testimony is all corroborated by certified orders taken from the minutes of the commissioners' court and the city council. There is no conflict in the evidence except as to the extent of the boy's injuries and the effect upon him and no issue is made in this court upon those matters.

The first contention to be considered is that under the uncontradicted testimony of the injured boy, in whose statements alone we find detailed the circumstances at the time of the injury, that no negligence is shown on the part of either the city or the irrigation company and that his damages, if any, are the result of an accident for which no one is responsible.

The negligence charged against the city is that its agents and employees built and contributed to the building and maintenance of the water wheel in its then position and condition and failed to build and construct guards and safety devices upstream to prevent children from being caught under the wheel.

■ According to the uncontradicted testimony, the city had no part in the construction of the water wheel and only contributed a small sum monthly toward the upkeep of the park. The wheel was not originally built for the benefit of the city; it derived no revenue therefrom and, according to the record, had no financial interest whatever in it. The wheel was the property of the county. The ditch in which it revolved was on land owned by the county. The city had no authority to remove the wheel and no legal duty rested upon it to do so. It did not invite the children to swim and bathe in the canal and nothing charged against the city could possibly be the proximate cause of the damages. It was neither alleged nor shown that

the ditch or the wheel constituted a nuisance or that the wheel was specially attractive to children. The county constructed the wheel for the purpose of raising water to irrigate the park, but it had not been used for that purpose for a long time and was not removed because it was supposed by some to be a novel and ornamental appurtenance. It is not charged that through any negligence of the city or the irrigation company the boy's foot slipped as he attempted to climb up the bank, causing him to fall back into the water. Why his foot slipped is a question which the record does not answer. He cannot be charged with negligence and certainly none can be charged against the city or the irrigation company. In accidents of this kind when neither party is chargeable with negligence, the damages are the result purely of an accident and the plaintiff cannot recover. Miller v. P. & S. F. Ry. Co. (Tex. Civ. App.) 35 S.W.(2d) 194, 202; Texas Electric Ry. Co. v. Burt (Tex. Civ. App.) 272 S. W. 255.

■ Where a minor possesses such a degree of intelligence as to appreciate the danger involved in his act, he is chargeable with contributory negligence as any other person. Freeman v. Garcia, 56 Tex. Civ. App. 638, 121 S. W. 886; Krisch v. Richter, 61 Tex. Civ. App. 563, 130 S. W. 186. There is no evidence tending to show that the boy was lacking in intelligence and his own testimony shows that he knew the wheel was dangerous when approached by boys in swimming and this is the reason why he attempted to climb out of the canal before he reached the wheel. His evidence also shows that he knew there was danger while bathing upstream, of being washed under the wheel by the current, and when a minor appreciates the danger of the position as it fully appears the boy in this case did, he is chargeable with contributory negligence. Dudley & Orr v. Hawkins (Tex. Civ. App.) 183 S. W. 776; Houston & T. C. Ry. Co. v. Simpson, 60 Tex. 103; Manlove v. Lavelle (Tex. Civ. App.) 235 S. W. 324; Galveston, etc., Ry. Co. v. Anderson (Tex. Civ. App.) 187 S. W. 491; Krisch v. Richter, supra; Freeman v. Garcia, 56 Tex. Civ. App. 638, 121 S. W. 886, supra. The general rule in such cases as this is that the burden rests upon the minor to show that he was so wanting in age, experience, or ordinary mental faculties that he did not know and appreciate the dangerous position in which he had voluntarily placed himself. He made no effort to do this, but, on the contrary, his own testimony shows the reverse to be true. Therefore, the evidence on this point does not sustain the court's judgment. 45 C. J. 1009, and authorities cited next above.

■ Since the evidence shows that the city had no financial interest whatever in the water wheel or the ditch in which it revolved, that it was not instrumental in having it installed, because the county built it and placed

834

it in position long before the city was incorporated, and because the city had no authority whatever in any part of the park and no right to remove the wheel from the canal, and further because no duty rested upon it to maintain the park as a place of recreation and amusement and the small amount contributed by it every month for the purpose of paying the janitor of the courthouse to keep the park was a mere gratuity paid without any legal duty resting upon it to do so, it was in no sense liable for the injuries complained of, even though negligence upon the part of any one had been shown. Rinker v. G.-H. Elec. Ry. Co. (Tex. Civ. App.) 176 S. W. 737; Mead v. Ph Zang Brewing Co., 43 Colo. 1, 95 P. 284; El Paso v. Causey, 1 Ill. App. 531.

■■ We do not think that the judgment can be sustained upon this theory. But even if we should admit that the city was in any measurable degree interested in the maintenance and control of the park, since it received no compensation, took no active control, and it does not appear that it had invited the plaintiff to use the canal for bathing purposes or that its officials knew that he was doing so, even then there would be no liability. At most, under the uncontroverted evidence, if the city actually participated in and was responsible for the control of the park and the ditch, the record shows that it was exercising only a governmental function in which event it cannot be held liable for the accident. Wiggins v. Ft. Worth (Tex. Civ. App.) 299 S. W. 468; Id. (Tex. Com. App.) 5 S.W.(2d) 761; Vanderford v. City of Houston (Tex. Civ. App.) 286 S. W. 568.

■ Since we do not know upon what theory the court rendered the judgment and are not permitted to set aside the trial court's findings and substitute our own, the only proper disposition for this court to make of the case is to reverse and remand it for another trial in accordance with the rules herein announced.