CHARLES FORD, a Minor by LLOYD FORD, Next Friend, v. ROCK HILL QUARRIES COMPANY, a Corporation, Appellant.—111 S. W. (2d) 173.

Division One, December 14, 1937.

*Fordyce, White, Mayne, Williams & Hartman* and *G. Carroll Stribling* for appellant.

1066

*Henry C. Stoll* and *G. H. Penningroth* for respondent.

FRANK, P. J.—Action to recover damages for personal injuries. Judgment for plaintiff for $20,000, and defendant appealed.

Respondent makes the following statement in his brief:

"The case was tried on the second amended petition. . . . The material allegations of the petition are as follows:

"Plaintiff . . . an infant ten years of age . . . for his cause of action states that the defendant during all the times herein mentioned, owned, possessed, controlled and maintained premises . . . known as 'Grant Road Yard of Hill Quarries Company.'

. . .

"That said premises were unfenced and that a private road extended from said highway toward and beyond certain buildings and equipment near the said quarry.

"That said private road provided a convenient means of access to the several buildings and the various things hereinabove described and enumerated, and that the said tall building provided convenient and accessible positions which afforded an unobstructed view of the beautiful landscape.

"That said tall building or crusher house was divided into several compartments or bins, equipped with chutes; and that the walls of said building contained several large, unguarded vents and holes; and that the floors and aisles or walks around the said compartments or bins were not guarded by means of hand rails or other safety devices; and that the entrance to said building was during all the times herein mentioned unlocked, unsecured and unfastened.

". . . And that the defendant knew that said premises were unfenced and unguarded and that said buildings were open, accessible and dangerous for children of tender years. . . .

"Plaintiff further states that by reason of his tender years as afore-

said, he was, during all the times herein mentioned, unaware of the dangers herein set forth and unable to appreciate said dangers.

"Plaintiff further states that on the first day of June, 1934, and for a long time prior thereto, he lived with his parents and brothers and sisters upon the defendant's aforementioned premises as defendant's tenants, occupying for a consideration as tenants, the said dwelling house upon the said premises and all the defendant's surrounding property for all legitimate purposes, including the right of ingress and egress and the right to play on and about said property, and that plaintiff's father was an employee of the defendant, and that on the first day of June, 1934, plaintiff was playing near the aforementioned quarry pit . . . he climbed said stairway and entered the said building.

". . . And that while plaintiff was playing and climbing thereon, he jumped down upon a floor within said building, which said floor was approximately forty-five feet above the ground, and that when plaintiff struck said floor he extended his hand to the wall for support to control his equilibrium and that said wall was broken at said place, having a large hole or vent extending upward from the level of said floor, and that said hole or vent was open and unguarded and thereby caused the plaintiff's body to twist, turn, roll and fall out through the said hole or vent onto the ground below, and that by reason of said fall plaintiff was seriously and permanently injured and damaged, as hereinafter more particularly set forth and described.

"Plaintiff states that his said injuries and consequent damages were directly and proximately caused by the following several negligent acts and omissions of the defendant. . . .

"VI. That the defendant negligently and carelessly omitted to (1) post signs upon said tall building warning said children, and particularly this plaintiff, of the danger of injury from playing on or about said premises; (2) to lock or otherwise secure the entrance door to said tall building in order to prevent said children from entering herein; (3) and negligently failed to close up the vents and holes in the walls thereof in order to prevent said children from falling through such vents or holes, and as a direct result thereof plaintiff was seriously and permanently injured and damaged.

"VII. That the defendant negligently and carelessly maintained the said stairway along the wall of said tall building in a convenient and accessible manner for children of tender age to climb thereon, in that the defendant failed and omitted to remove the lower portion thereof or to close it off by means of a fence or some other satisfactory device, when it knew, or by the exercise of ordinary care could have

known, that said building was extremely attractive and alluring to such children, including this plaintiff, and knew or could have known that such children were in the habit of playing in and about said tall building, and knew or could have known that said children, and particularly this plaintiff, were likely to fall from said stairway or fall through the several vents and holes in the walls of said building, or fall into the several compartments, bins and chutes thereof, and were therefore in constant and imminent peril of being killed or seriously and permanently injured as was this plaintiff.''

Above allegations of the petition, which respondent denominates as the material allegations, omit many allegations which, in our judgment, relate to the doctrine of attractive nuisance.

Appellant contends that plaintiff failed to make a case under the attractive nuisance doctrine. In presenting the case here, respondent, in effect, concedes that the doctrine of attractive nuisance is not in the case, then expressly states that the case was pleaded, tried and submitted on the theory that plaintiff was an invitee on the premises in question. In view of respondent's concession that the doctrine of attractive nuisance is not in the case, we need not spend further time on that question. Whether respondent is right as to the theory upon which the case was tried and submitted presents another question.

We call attention to the following allegations of the petition:

''Plaintiff further states that on the first day of June, 1934, and for a long time prior thereto, he lived with his parents and brothers and sisters upon the defendant's aforementioned premises as defendant's tenants, occupying for a consideration as tenants a certain frame dwelling upon the said premises near the said quarry plant *and all the defendant's surrounding property* for all legitimate purposes, including the right of ingress and egress and the right to play on and about the said property.'' (Italics ours.)

We construe above allegations of the petition as meaning that plaintiff and other members of the family were tenants of all of defendant's premises, which, of course, would include the crusher house in which plaintiff was injured. It is settled law that if they were tenants of the premises on which plaintiff was injured, no recovery could be had in the absence of an agreement on the part of defendant to keep such premises in repair. [Shaw v. Butterworth, 327 Mo. 622, 38 S. W. (2d) 57.] There was no evidence that such an agreement was made. The facts show that plaintiff's father was employed by defendant as a laborer in its rock quarry. He lived with his family in a rented house located on land adjacent to defendant's premises, owned by one Ulrich. In January, 1932, work began to get slack, and defendant's superintendent told plaintiff's father that he could move into a dwelling house located on defendant's premises; that he could have the use of said dwelling house and a garden spot rent

free, and get his firewood off the premises without charge, in consideration of his watching and looking after the premises. Plaintiff's father with his family, including plaintiff, moved into said dwelling house and occupied same pursuant to aforesaid agreement. In July, 1932, the rock quarry on defendant's said premises ceased operations, and plaintiff's father was left on the premises as a caretaker from July, 1932, to March, 1933, on which latter date he was transferred to another rock quarry of defendants, some five miles distant, where he worked as a laborer. Upon such transfer he continued to live in the house on defendant's premises under the agreement aforesaid. This was all of the evidence touching the agreement as to the occupancy and use of defendant's premises by plaintiff's father and his family. It thus appears that defendant did not agree to keep any part of the premises in repair. As heretofore seen, if plaintiff's father was tenant of the entire property, including the crusher house in which plaintiff was injured, plaintiff cannot recover because he, as tenant, took the property in its then condition without an agreement on the part of defendant to keep the premises in repair.

On the other hand, if plaintiff and his family were tenants of the house and garden only, plaintiff had no authority to roam over the remainder of the premises and enter into and climb to the top of the crusher house unless he did so on the invitation of the defendant, either express or implied.

The evidence upon which respondent relies to establish the fact that he was an invitee on the premises in question is that respondent, as well as many other children and older folks, frequently played upon said premises, and about and in the crusher house; that the officers of defendant company. saw and knew of such facts, but did not object thereto, or direct those participating not to do so, or warn them of any danger in so doing; that during the time the crusher was operating, plaintiff's father took him into the crusher building to show him how the work was done.

In our judgment the fact that defendant knew that respondent and other children frequently played on said premises, and about and in the crusher house, but failed to object thereto or warn the participants of the probable danger in so doing, or eject them from the building, did not amount to an invitation to plaintiff to enter the crusher house and play therein. At most, such facts only gave him tacit permission to do so. Tacit permission amounted to a mere license and not an invitation. Our conclusion is supported by authority. The case of Kelly v. Benas, 217 Mo. 1, 116 S. W. 557, was a suit by parents to recover for the death of their son nine years of age, caused by a pile of lumber falling upon him. The court summarized the pleadings as follows:

"The petition charges the intermarriage of plaintiffs; that their

son, Michael, was the rise of nine years old on the 18th of June, 1905; that defendants were the owners, occupants and proprietors of certain premises on South Second Street in the city of St. Louis and the lumber and lumber yard thereon; that said premises opened on said street and on a public alley, were unfenced and unguarded, and that children in large numbers played on the premises, all of which defendants well knew; that such open lumber yard was an attraction for children to play on said premises at and about where the lumber was piled, as defendants well knew; that children in large numbers were attracted to play at and about the piles of lumber upon said premises and were endangered, if such lumber be negligently piled, all of which defendants well knew before Michael was killed; that defendants negligently piled lumber in their yard so loosey, insecurely and without any fastenings that said lumber fell upon Michael and injured him so that he died; that on said date defendants had piled and were maintaining a pile of lumber in said yard in such manner that long pieces of lumber and timber were laid on top of shorter pieces, to a great height; that thereby said pile was made top-heavy and liable to fall; that the pile was built without braces or cleats to secure it from falling and was without fastenings of any kind to prevent its falling; that a pile so piled was dangerous to persons near the lumber, because liable to fall and injure them; that it was especially dangerous to children attracted by said premises to be and play near said pile, as defendants well knew at all said times, notwithstanding which defendants so negligently piled and maintained said lumber pile in such dangerous and defective condition that on said date Michael was attracted to said premises to be and play thereon near said dangerous pile of lumber, when by reason of its defective condition it gave way and the lumber falling upon Michael fractured his skull and otherwise so broke his bones and crushed him that he died two days later.

"The answer was a general denial and a plea of the negligence of Michael, in that he with some companions wrongfully trespassed upon the premises and carelessly and negligently caused lumber to fall upon him; and, moreover, that the injuries of Michael were caused, or directly contributed to, by the carelessness and negligence of plaintiffs in permitting their said son wrongfully to trespass upon said premises and the lumber piles.

"The reply was a general denial."

Plaintiff in that case offered evidence tending to show that the lumber was negligently piled; that children frequently played in the yard with defendant's knowledge. Patrick Kelly, one of the plaintiffs, testified that defendant, Benas, told him in the presence of one Carraher and his own foreman, the next day after the accident, that he, Benas, knew boys played there and that the pile of lumber was

not in good condition. Carraher also testified that he heard Benas say that the lumber was not piled right. Defendant offered evidence to the contrary. The trial court directed a verdict for defendant. On appeal this court affirmed that judgment. In so holding we said:

"We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant, . . . A person incurs no duty towards persons by not warning or driving them from his premises, and they go there, if mere volunteers, and without invitation, at their own risk."

In that same case, we further said:

"One applicable general rule of law is that there must be a duty raised by the law and breached by defendant before an action for negligence lies. Another is that the landowner or occupant owes no duty to trespassers or volunteers going upon his land for their own purpose, to maintain it in any particular condition for their benefit. . . . Volunteers, bare licensees and trespassers take the premises for better or for worse, as they find them, assuming the risk of injury from their condition, the owner being liable only for spring guns, or other hidden traps intentionally put out to injure them, or any form of willful, illegal force used toward them."

The case of Shaw v. Goldman, 116 Mo. App. 332, 92 S. W. 165, clearly states the rule thus:

"It is abundantly established that one who enters upon the premises by permission only, without invitation, enticement or allurement held out to him by the occupier or owner or some representative thereof, enters there, at the very best, by mere permission, becomes a licensee only and enjoys the license at his own risk, or as it has been well said, he enjoys the license with its concomitant perils and takes upon himself whatever risk from pitfalls or other obstructions that may attend such merely permissive entry and in such case, no duty is imposed by law upon the owner or occupier to keep the premises in a suitable condition for those who go there solely for their own convenience or pleasure or to satisfy their curiosity."

The law announced in the cases above cited is so well settled that it is unnecessary to cite the numerous other cases holding likewise.

The quarry and crusher house were located three hundred feet from the house in which plaintiff lived. The facts show that plaintiff ascended the stairway leading from the ground on the outside of the building to the first floor forty-five feet above the ground. He entered the building through a door at the head of the stairway. Upon entering the building he climbed up the wall and rafters in order to reach and explore a bird's nest. While there a wasp stung

him. In an effort to escape the attack of the wasp, he jumped from his position to the first floor, lost his balance and fell through a hole or opening in the side wall of the building to the ground, a distance of forty-five feet, causing the injuries complained of. It is clear that plaintiff did not enter the building for any purpose connected with business or other relations with defendant. He went there for his own pleasure, and climbed to the top of the building to satisfy his own curiosity about the contents of a bird's nest. Defendant's knowledge that plaintiff and other boys frequently played about and in the crusher house, and its failure to object thereto, did not amount to an invitation to them to do so. The most that can be said of defendant's conduct in the premises, is that it gave plaintiff and the other boys tacit permission to play in the house. Tacit permission is a mere license and not an invitation. In this situation, plaintiff was a mere licensee, and defendant owed him no duty except not to willfully injure him which it did not do. [Kelly v. Benas, supra.]

For the reasons stated, we hold that the court erred in refusing defendant's demurrer to the evidence. The judgment should be reversed. It is so ordered. All concur.