JOHN H. DORAN, ET AL., RESPONDENTS v. KANSAS CITY, MISSOURI, A MUNICIPAL CORPORATION, APPELLANT.—237 S. W. 2d 907.

Kansas City Court of Appeals. Opinion delivered March 5, 1951.

*David M. Proctor,* City Counselor, *Henry Arthur, Preston H. Longino, John J. Cosgrove,* Assistant City Counselors, for Appellant.

*Edgar Shook, E. P. Mitchell, Elmo B. Hunter, Sebree, Shook, Hardy & Hunter,* for respondents.

DEW, P. J.—The respondents, plaintiffs below, brought this action in two counts to recover damages therein for the death of their

two minor sons, respectively, by drowning. The verdict and judgment in each count were in favor of the plaintiffs in the sum of $3500. Defendant has appealed.

The substance of each count of the petition is that Brush Creek, a drainage ditch, runs from west to east across a thickly populated portion of Kansas City, Missouri; that its bed is paved with cement throughout most of its course, particularly between Paseo Boulevard and Cleveland Avenue, which concrete ends abruptly at a point where the creek passes under the Cleveland Avenue bridge in said city, and at which point on July 12, 1948, and for a number of years prior thereto, there was a deep excavation or hole in the concrete bed; that on that date and on former occasions, that excavation or hole was filled with dirty water which covered a part of the concrete bed under the bridge and concealed the abrupt end of the concrete pavement and the hole; that the hole was left unguarded and with no warning of its existence.

It is further alleged that on the date mentioned and long prior thereto, the creek bed was used as a playground by children; that on the date mentioned and usually, the concrete bed was smooth and dry, except for a small channel in the center, and except for an accumulation of mud near the end of the concrete at Cleveland Avenue. The petition states that between the Paseo and Cleveland Avenue the creek passed through and was a part of a public parkway along which defendant had placed the usual attractive objects for children to play on, and other facilities of a public park; that the creek bed was wholly unguarded where it passed through the parkway. It states that the creek bed was dangerous to children because of the concealed and unguarded hole at the end of the concrete bed, thus constituting a death trap for children playing in the concrete bed or thereabouts.

It is further averred that the defendant knew, or by the exercise of ordinary care should have known, of the use of the concrete bed by children, its attractive nature and its danger to children; that defendant had specific notice thereof in 1944 by the drowning of one Carl Dean Shriver, a minor child, resulting in a suit for his death. It is alleged that on July 12, 1948, plaintiffs' son, John Hamilton Doran, Jr., aged nine, a second grade student, (Harlan Eugene Doran, the minor child described in Count 2, was alleged to have been seven years of age and a first grade student), entered Brush Creek at a place where it ran through the public parkway described, and where he had a right to be; that while playing with other children he proceeded easterly in the creek bed toward the end of the concrete at Cleveland Avenue, where he fell into the unguarded hole described, which was then filled with water, and was drowned.

The negligence of the defendant as charged in the petition was that it negligently failed to fill and keep the hole in the concrete bed filled or otherwise safe for children, especially the deceased named, which would have been practicable, feasible and of small expense; failed to provide adequate walls, fences or other safeguards to prevent such children from falling into the hole; failed to keep a watchman or guard on hand to keep children away from the hole; failed to warn children of the danger; permitted water to accumulate therein so deep as to endanger the lives of children who might fall into it; permitted dirty or muddy water to accumulate so as to cover a portion of the concrete pavement and the abrupt end thereof at or near the hole; permitted mud to accumulate near the hole so as to cause persons passing it to be in danger of slipping or falling into it.

By its answer defendant admits the location of Brush Creek, placed there by the forces of nature; that its bed was of concrete throughout most of its course to Cleveland Avenue; that the creek is used for drainage of surface waters from its adjacent territory and from connecting storm sewers. All allegations of negligence were denied. Further answering, defendant alleged contributory negligence consisting of voluntarily entering the hole, and that the maintenance of the creek for drainage purposes was a governmental function of the defendant whereby defendant is not liable for the damages claimed by the plaintiffs.

Defendant's sole point on this appeal is that the court erred in refusing defendant's motion at the close of the plaintiffs' case and at the close of all the evidence for a directed verdict in its favor for the reason that there was no evidence that defendant was guilty of any negligence, and further for the reason that the evidence showed that the two children were in a place where they had no right to be, and that the court erred in refusing to direct a verdict in defendant's favor on the first count for the reason that John Hamilton Doran was negligent as a matter of law.

The defendant, by having proceeded with its evidence after the court refused its motion for a directed verdict at the close of plaintiffs' case, waived its objection to that action of the court. Porter v. Equitable Life Assurance Society, 71 S. W. 2d 766, 772.

The nature of the remaining points requires this court to consider the evidence offered by the plaintiffs in the light most favorable to the plaintiffs, together with such of defendant's evidence as is favorable to the plaintiff's case, and to consider the facts to be true, as disclosed by such evidence. Robertson v. Wall, 195 S. W. 2d 894. These facts, then, as shown of record, are stated below.

Brush Creek enters Kansas City from the state of Kansas at the Missouri-Kansas state line at about 52nd Street of that city, and follows a meandering course easterly across a thickly populated

part of the city almost to the eastern city limits, where it empties into the Blue River. Some time in the 1930s the creek bed was paved with concrete throughout most of its course for about three miles, from the state line to a point under the bridge at Cleveland Avenue. Its banks were walled with stone and cement. The concrete bed is wide and smooth and varies in width, being 150 feet wide as it approaches Cleveland Avenue from the west, but narrowing to 64 feet as it runs under that bridge. Approximately in the center of the concrete bed throughout its length is a small concrete channel or trough about eight feet wide and a foot deep, in which the flow of the water of the creek is confined except after heavy rainfall. The creek drains about thirty square miles of area, and many storm sewers empty into it. The effect of the improvements of the creek above described was to accelerate the speed of the flow, and by the narrowing of the creek bed at the Cleveland Avenue bridge the high water is caused to leave the abrupt end of the concrete with a rushing and churning effect, tending to dig or erode the natural dirt bed at that point.

The defendant had, by condemnation and ordinance, constituted Brush Creek as a public parkway, together with adjacent strips of land on both sides along its course, where, at various places, to within a block and a half of the end of the concrete bed, picnic grounds, ball grounds, outdoor ovens and other recreational facilities were maintained for several years by defendant, and used extensively by children and adults. The concrete bed of the creek, when dry, was attractive to children who, in great numbers and for at least two or three years past, rode bicycles and played ball thereon, and sailed boats in the center trough, and played on roller skates on the smooth portions of the concrete bed, safe from the hazards of the streets. Of these facts defendant had notice for several years. Under its charter and ordinances defendant had control and charge of the Brush Creek parkway and the duty to maintain the same.

The concrete bed ended abruptly under and at the east side of the Cleveland Avenue bridge. Several years before the accident in question, defendant had constructed a concrete apron extending from and seven inches below the end of the concrete bed and eastward in the creek bed from 2 to 20 feet upon which mud and dirty water accumulated, adding to the appearance of a shallow continuation of the water. This apron had disentegrated so that near the south bank a jagged portion of it extended eastward in the shape of an inverted V. The force of the water over the concrete bed of the creek at said points, as it passed under the Cleveland Avenue bridge and left the abrupt end of the concrete bed and apron, had eroded and excavated a deep hole which at times remained full of water after the concrete bed and apron to the west were dry, which hole extended

east some 44 feet and to the south bank of the creek east of the bridge arch. The water in this hole and near the south bank of the creek was over eight feet deep. A large boulder or two extended well above the surface. The pool had the appearance of being shallow from the end of the concrete bed and from the south bank beyond. The defendant, for at least six months prior to the accident and apparently for several years, had notice of the existence of this hole and had ineffectively, at odd times, dumped some rock and concrete breakings into it. On the day in question, the depth of the water in the hole where it extended to the south bank of the creek just east of the bridge and beyond the concrete bed, was concealed, the extending concrete apron was submerged and its ragged termination was not evident. There were no warning signs or other means provided to put one on guard as to the depth and danger of the pool. There was evidence that a practicable and feasible method of permanently filling the hole in question was available by the placing therein in jagged formation, for about 100 feet from the end of the concrete, sufficiently large boulders protruding above the water level in such a manner as to slow up the fast current at that point and to prevent further erosion and excavation, and to keep the hole filled, which would have cost $1000 or $1500.

On July 12, 1948, plaintiffs' two young boys, accompanied by another boy, Robert Darrah, age seven, who had a small bicycle, entered onto the concrete creek bed of Brush Creek at about 48th Street and Tracy Avenue, about 23 or 24 blocks west of Cleveland Avenue. The day was dry and warm. They rode the bicycle and played along eastward on the concrete, stopping to build a dam near where the creek passes adjacent picnic grounds, then proceeding on, playing "guns", stopping to explore a "tunnel" (storm sewer) which entered the creek bed west of the Cleveland Avenue bridge, and thence they proceeded under the bridge and to the end of the concrete bed. There was no evidence that they had ever been to that point before. John, the older Doran boy, was pushing the bicycle. The three boys attempted to proceed eastward down the natural creek bed by way of its mud bank, beginning at the end of the concrete and at the corner of the south wall of the bridge arch. The water standing in the hole at the end of the concrete bed covered the concrete apron to the south arch of the bridge, and the dirt bank beyond sloped toward the hole and was wet and slippery. As the boys attempted to leave the concrete bed and proceed along the south mud bank of the hole just east of the bridge, the bicycle slid into the water. Both the Doran boys declared they would go into the water after the bicycle; that the water "must not be very deep", and Robert Darrah said "You better hadn't". Harlan stepped out on the apron or ledge which, Darrah testified, he "thought went on", slipped and fell into the deep water. Thereupon John entered the water on the ledge or

apron at a point a few feet north to rescue his brother and he, too, fell into the hole feet first. Neither boy had learned to swim. Two other boys and a little girl arrived at the scene and the children then ran to a nearby filling station, reported the accident and a man rushed to the pool, went into the water over his head and, while treading water, fished out the boys. Efforts were made to save them by artificial respiration but to no avail.

There was evidence that both of the Doran boys were healthy, normal children, intelligent, helpful to their parents in and about the household, and possessed noticeable talent in vocal music. They both attended Sunday school, and were in public school grades appropriate for their respective ages.

It is the theory of the plaintiffs that the children lost their lives by reason of the negligence of the defendant at a place where they had a legal right to be; that they were drowned in a deep pool in a public park belonging to and under the control and management of the defendant; that the concrete bed bordered by playgrounds, picnic grounds and recreational facilities, was attractive to children, and that they played on the concrete in great numbers throughout its course to the place of the accident; that the danger of the pool was concealed and formed a trap, perilous to children playing thereabouts; that it was the duty of the defendant to use ordinary care to maintain the creek bed reasonably safe to such invitees; that the city had actual and ample notice of the dangerous condition at the end of the concrete bed, and had negligently failed to use the effective, feasible and inexpensive means to remove the danger at the place of the accident.

The defendant contends that the boys were not drowned as the result of using the park property or park facilities, the closest area provided for playground purposes being a block and a half west of Cleveland Avenue; that the children were not invited to swim or otherwise to play in the pool, and that there was no evidence that they did; that the children were not trapped or misled into believing that there was a safe way east of the end of the concrete paving but that, through their adventuresome spirit they were prompted to push their bicycle over and along the south side of the pool despite the warning from their playmate; that the children had no right to be where they were and at best were mere licensees, if not technical trespassers; that defendant was not required to fence or fill in the pool; that for the above reasons the fact that the end of the concrete bed of Brush Creek and the pool were within park property was immaterial.

The essential elements of plaintiffs' case were submitted to the jury in main instructions requested by the plaintiffs on both counts, and based on substantial evidence heretofore stated. Those instructions submitted the issues of ownership, care, control, duty and lack

of ordinary care by the defendant, if any, respecting the bed of Brush Creek as a part of the city's parkway; the formation, depth, location and conditions of the hole; the permitting of the hole to remain filled with water; the concealment of its character; the issue of whether children were accustomed to play in said parkway and creek bed, and whether the hole was dangerous to such children; the matter of notice to defendant in time thereafter, with ordinary care, to have made such conditions safe before the drownings in question; the fact of the boys' falling into the hole while playing thereabouts; the reasonable care, if any, exercised on the part of each child drowned, and whether the negligence of the defendant stated, if so found, was the direct cause of their deaths. Upon instructions offered by the defendant, the court submitted the issue of contributory negligence on the part of the boys. All these issues were, by the jury, found in favor of the plaintiffs.

The entire creek bed was a part of the city's land set aside for public parkway. The concrete bed extended to the deep hole at Cleveland Avenue and there is no evidence that the custom of the children to use the concrete bed for their play ended at the nearest playground adjacent to the creek, a block and a half to the west. There was sufficient evidence that not only the plaintiffs' children on the occasion in evidence, but other children used the parkway and creek bed for park purposes, and there is reasonable inference that such use extended to the end of the concrete bed, at the exact end of which the deep pool of water was located.

Defendant asserts that under the evidence the boys were not invited by the city to play on the concrete bed of the creek, but were forbidden by ordinance to do so. As above stated, there is substantial evidence that children had long been accustomed to play on the wide, smooth bed of Brush Creek throughout its course, a part of the public parkway, free from the danger of street crossings, and convenient to adjacent picnic grounds and recreational facilities, and there were no signs or other warnings at or near the Cleveland Avenue bridge to prevent such use.

An ordinance of May, 1946, forbade "any person to enter or trespass upon the paved bed of Brush Creek." The measure of care required of a child for its own safety is such care as "an ordinarily prudent child of the same capacity to appreciate and avoid danger would use in the same situation." 65 C. J. S. 789. Such requirement would not hold such child to the same reasonable and prudent conduct as adult persons. The effect on such rule by the existence of an ordinance and the violation of same by an infant of tender years is not to create contributory negligence per se as in the case of adults. Davoren v. Kansas City, 308 Mo. 513, 273 S. W. 401, 405. The violation of such an ordinance on the part of the boys in question was merely a fact in evidence for the jury to consider in

connection with that defense. In Fightmaster v. Mode, 31 Ohio App. 273, 167 N. E. 407, such a defense was made in a suit for the death of a 13 year old boy who, it was charged, had met his death by reason of violating certain traffic ordinances. That court well said, 167 N. E. at page 411:

"We think that reasonable men might well differ as to whether a boy 13 years old, of ordinary care and prudence, should have the intelligence, experience, and discretion to govern his actions at all times in conformity to the standard of care required by the statute and the ordinance above referred to. * * * In the present state of the record this question should be left to the jury.

* * * *

"While the trial court properly permitted the defendant to plead the ordinance and put it in evidence, we hold that it was error to charge the jury that violation of the ordinance, or of the statute, would constitute negligence per se. We hold the law to be that it was for the jury in this case to determine, as a question of fact, whether violation of the ordinance or of the statute by the plaintiff would constitute negligence—his age, education, experience and intelligence considered".

In the case at bar the instruction given at the request of defendant on the subject of contributory negligence, made no specific mention of the ordinance or its violation. As to whether the children were otherwise guilty of contributory negligence, that issue was submitted to the jury on an instruction requested by the defendant solely as to whether "the plaintiffs' boys, or either of them knew, or in the exercise of that degree of care common to boys of their age, could have known that it was dangerous for him to go into the water to recover the bicycle, and if you further find that the failure of either of them to exercise such care was negligence, and that such negligence, if any, contributed to their death, then your verdict should be for the defendant".

Defendant insists especially that John, the older boy, was guilty of contributory negligence as a matter of law. He was then at the age of nine. It is urged that he understood, appreciated and was warned of the danger. The cases cited by the defendant as to John's negligence, involved reckless, premeditated, obvious risks such as running behind a street car and into one approaching from the opposite direction, as in Battles v. Rys. Co., 178 Mo. App. 596, 161 S. W. 614; swimming in an irrigation canal, City of Maynard v. Coats, 60 S. W. 2d 831 (Tex. Civ. App.); a nine year old boy dragging a block of ice by a string tied to his wrist and extending across a railroad track and being drawn under a passing switch engine, Spillane v. Railroad, 135 Mo. 414, 37 S. W. 198; an eleven year old boy standing so close to the railroad tracks that the air suction of

the passing train drew him under its wheels, Graney v. St. Louis Ry. Co., 157 Mo. 666, 57 S. W. 276; and the like. Not only in most of these cases was the danger obvious, and the child's conduct culpable, but the rescue element was wanting. "The rule is well settled that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made. In other words, in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under other circumstances would deprive him of legal redress for injuries sustained". 38 Am. Jur. p. 912, Sec. 228. Especially should the above salutary principle of law be applicable to young and inexperienced children. We are unwilling to say that under the evidence either child was guilty of contributory negligence as a matter of law.

The defendant further insists that the boys were mere licensees, if not technical trespassers and defendant was not required to fence or fill the hole. "The public parks of the cities should be maintained in a reasonably safe condition for those who frequent and use them and especially for the unprotected youth". Capp v. City of St. Louis, 251 Mo. 345, 352, 158 S. W. 616. "Municipalities are responsible for the failure to exercise ordinary care to maintain public parks in a reasonably safe condition as to children attracted there. That is, the municipality is responsible for negligence". Volz v. City of St. Louis, 326 Mo. 362, 366, 32 S. W. 2d 72, 73.

Under the charter and ordinances in evidence in the present case the duty above outlined, was imposed upon the defendant. In the Capp case, supra, many children frequented the city park; a large creek ran through it; children waded and played in it; a large storm sewer emptied into its bed; at its mouth was a larger hole made by the water flowing from the sewer; the hole was left unguarded; stone steps led down to it; the pool had existed for years and could easily have been guarded at small expense; in its usual stage, the amount of water was from 8 to 12 feet deep. Plaintiffs' child was found drowned in the pool. The court, sitting en banc, said, 251 Mo. p. 354:

> "In this case the son of the plaintiffs lost his life in a pool of water, located in a public park, a place where the child had the right to be; but the record fails to show that either the boy or his parents had any knowledge of the depth of the pool. So in the consideration of this case, care should be taken so as not to confuse the principles of law governing it with those controlling the turn-table cases, for the obvious reason that one might be entitled to a recovery in this class and not in that. * * * the uncontradicted evidence shows that Forest Park was a public

resort for men, women and children, and that thousands visited it daily, and especially children, boys and girls; also that they were in the habit of wading, playing and fishing in said river, and playing on and about the steps at the mouth of the sewer, where there was a pool of water from eight to twelve feet deep in the center. This pool was caused by the waters of the stream flowing down and over the steps mentioned, and washing the dirt and soil from the bed of the river, thereby making an excavation therein which filled up with the waters thereof.

"This pool had existed for years, and unquestionably the city had knowledge of its existence, while the evidence shows it could have been filled up or guarded at a very small cost.

"The park being a public place, and containing this unguarded pool of water, and frequented at the invitation of the city, by many children, young and indiscreet, who we all know are greatly attracted by pools of water, bubbling brooks and running streams, made the situation highly attractive and dangerous to any and all children who might approach the place and play in or about the stream and pool.

"That evidence, in my opinion, was sufficient to warrant the court in submitting to the jury the question, whether or not said conduct of the city was such as an ordinarily prudent person would have done under similar circumstances. If it was, then the city was not liable for the damages done; if, upon the contrary, it was not, then the city was liable. That was a question of fact which the trial court, in my opinion, properly submitted to the jury, which, I believe, is supported by the following authorities: (citations)".

Defendant cites and relies much on Volz v. City of St. Louis, 326 Mo. 362, 32 S. W. 2d 72. In that case the city maintained an open, natural pond in the city park, 100 feet long and 40 feet wide and at one place about 10 feet from the nearest park driveway. The pond at places was 6 feet deep. Four boys approached the pond one day in February when it was covered with melting ice on which there was standing water ankle deep. Three of the boys were brothers. The fourth boy, a companion, tried walking on the ice, his foot broke through at a shallow point and he told the others the ice was not safe. A few minutes later one of the brothers, aged 6, broke through, grabbed a protruding stick and while thus supporting himself, another brother, aged nine, started to the rescue and he, too, broke through, whereupon the latter called to the third brother, aged 11, who, in attempting to go to the rescue of his brothers, fell through and was drowned. The theory of the plaintiffs there was that the city maintained the pond in the park without fence or guard to prevent children of tender years from going upon the ice. The opinion points out that the park was for the benefit of the

public at large; that to construct a fence or barrier about the natural pond sufficient to keep children from entering would not have been practicable, if at all possible, and would have been unsightly and ruined the natural symmetry and beauty of the scenery to which the general public is entitled; that the negligible danger of youth drowning in such pond should be subordinated to the pleasure of the public as a whole; that the boys were aware that the ice was dangerous, and were thus warned in a manner as effective as by posting of signs would be; that the city was not negligent in failing to fence or guard the pond. The court distinguished the Capp case, supra, by saying that it "was based on the maintenance of a hole in the nature of an entrapment in a shallow stream in which children were accustomed to wade".

Defendant cites Ford v. Rockhill Quarries Co., 341 Mo. 1064, 111 S. W. 2d 173, wherein the court held that a ten year old child could not recover damages incurred by the falling of a crusher building upon private property of the defendant, as the child was a mere licensee on such premises, even though the defendant knew that children played about the building and premises. See, also, Lentz v. Schuerman, 359 Mo. 103, 220 S. W. 2d 58. These and other cases cited involving conditions on private property would not be determinative of the issues in the case of a child injured in a public park.

We believe the principles of the Capp case, supra, apply to the case at bar. The long, wide, smooth and usually dry concrete bed of Brush Creek for nearly three miles, developed and bordered at frequent intervals within a block and a half of its end through a thickly populated portion of the city, all in the park property of the city, with playgrounds and recreational facilities, afforded the most attractive place for children to roller skate, ride bicycles, play ball, hike, build dams and generally to spend much of their playtime, safe and undisturbed by the traffic in the streets of the vicinity. This was well known to the defendant city. Without interruption, warning or other guard, this inviting, attractive course led directly to a deep, dangerous hole, filled with water, beginning abruptly at the end of the paved portion of the creek bed. The danger was further concealed and aggravated by the shallow, mud-covered, jagged and irregular apron extending but a few feet from a point of safety to the deadly depth of the pool. These conditions, likewise, were well known to the defendant for a long period of time and, according to the evidence, could have been easily remedied at small cost. There was substantial evidence to submit to the jury the issue of the defendant's negligence. The judgment is affirmed. All concur.