WILLIAM P. VOLZ and DORA VOLZ, His Wife, Appellants, v. CITY OF ST. LOUIS.—32 S. W. (2d) 72.

Division Two, October 13, 1930.

*Harry Baer* and *Jesse T. Friday* for appellants.

*Julius T. Muench* and *Richard S. Bull* for respondent.

DAVIS, C.—This is an action by the surviving parents of one Leslie Volz, a minor, to recover damages from the city of St. Louis, due to its alleged negligence, for the death, on February 15, 1925, of said minor, then aged eleven years, by drowning in a pond or pool of water in Carondelet Park, an open and public park of said city. The plaintiffs' petition prayed damages in the sum of $10,000. Tried to a jury, a verdict in the sum of $5,244.50 was returned. The defendant, city of St. Louis, in due time filed a motion for a new trial, which the trial court sustained on the grounds that the court erred in giving to the jury erroneous, misleading and prejudicial instructions offered on behalf of plaintiffs, and in refusing to sustain a demurrer to the evidence offered by defendant. Plaintiffs appealed from the order of the trial court sustaining defendant's motion for a new trial, and now ask this court to order the verdict of the jury and the judgment reinstated.

Even though the amount in dispute is less than the amount required to invest this court with jurisdiction (Williams v. Railroad, 233 Mo. 666, 136 S. W. 304), nevertheless the defendant, city of St. Louis, is a political subdivision of the State within the meaning of Section 12, Article VI, of the Constitution, and thus we are invested with appellate jurisdiction (Steffen v. St. Louis, 135 Mo. 44, 36 S. W. 31).

The defendant neither introduced nor offered evidence in its behalf, but relied upon the insufficiency of plaintiffs' evidence to make a case. The evidence submitted in behalf of plaintiffs warrants the finding that, on February 15, 1925, about three-thirty o'clock in the afternoon, in Carondelet Park, a public park owned, maintained and operated by defendant, Leslie Volz, a minor, aged eleven years,

the son of plaintiffs, was drowned in a pond or pool of said park, which was then covered with ice, on which about three-eighths of an inch of water had accumulated, while attempting to rescue a younger brother, Herbert, six years of age, who was in peril. February 15, 1925, was Sunday. The day was warm and people were about without overcoats.

Leslie, Herbert and their brother, Elmer, aged nine years, together with a companion, Ralph Walters, aged eleven years, after telling their father that they intended to take a walk in the woods near home, left home around one-fifteen P. M., and later wandered to Carondelet Park about twenty blocks distant. After traversing hills and valleys in said park, and viewing ponds that were exposed to the sun, on which the ice had become slushy, the boys came to the pond in which Leslie was drowned. The pond was natural and had formed in what is known as a sink in the ground and resulted from the accumulations of surface waters. The ground on all sides sloped to the center and it was shaded more or less from the rays of the sun. It was about 100 feet in length and forty feet in width, and lay about 150 feet from and ten feet or more below the nearest park driveway. At the place where Leslie's body was found the pond was about six feet deep. As the boys approached the pond, the ice appeared somewhat more firm than on the other ponds, due, it may be inferred, to its shaded position, and yet the boys saw that water had accumulated on the ice sufficient to cover the soles of their shoes. The pond was not enclosed by a fence or otherwise, nor were signs or a watchman provided. Boys often had been observed fishing in the ponds or sink holes and playing around with little boats.

On arriving at the pond, all of the boys went upon the ice. Ralph Walters' foot went through when he was about two feet from the shore, and going back to shore he advised them of the occurrence, but they proceeded further upon the ice. He said he told them that it was not safe. It was five or six minutes after his foot broke through the ice before Herbert broke through. After breaking through the ice, he called to them and told them it was not safe. He knew it was dangerous, and he told the other boys he thought it was dangerous.

The evidence shows that, about five or six minutes after Ralph's foot broke through, Herbert Volz, six years of age, decided to venture on the ice to reach a two-by-four protruding stick to ascertain if it was tight in the ice. As he neared it, the ice broke, and his brother Elmer, nine years of age, went to his aid, but as he came within about two feet of Herbert, the ice broke under him. He called to his brother Leslie, and Leslie, in attempting to reach them, broke through the ice, sank in the water and drowned. Herbert clung to the two-by-four stick and was rescued by a Mr. Reid, who jumped

in the water and saved the boy. Elmer supported himself on a cake of ice and was rescued from the water by Dr. Baehr, who approached as Reid came out of the water with Herbert.

Elmer Volz testified that he observed that the ice on the other ponds had melted. When they arrived at this particular pond, the ice appeared to be pretty solid, although some water was on the surface, about three-eighths of an inch. He observed Ralph Walters step on the ice and the ice break, whereupon Ralph returned. It was after that that Herbert proceeded to the other side of the pond to go to the two-by-four stick protruding above the ice.

The evidence shows that this action was filed on May 6, 1925, and a writ was issued by the circuit clerk. Defendant admitted that the city of St. Louis owned, controlled, operated and managed Carondelet Park, on February 15, 1925, and that Leslie Volz came to his death on said day as the result of drowning in said park. The city also admitted the serving of a written notice in compliance with the statute on the mayor. Other facts, if any, pertinent to the issues, will be adverted to in the opinion.

I. Municipalities are responsible for their failure to exercise ordinary care to maintain public parks in a reasonably  safe condition as to children attracted there. That is, the municipality is responsible for negligence. Plaintiffs' theory of recovery was that the city of St. Louis was negligent in maintaining or permitting the existence of a pond in Carondelet Park without providing a fence, rail or guard around the water so as to prevent children of tender years from going upon the ice.

Public parks in cities are constructed and established for the pleasure and recreation of the citizenry at large, and the normal citizen is entitled to have the park maintained to that end. To keep a child of an age permitted by its parents to wander unattended or to wander accompanied by other immature children from going upon the ice or into the water would require a fence or barrier of such height and inaccessibility as to destroy the symmetry and beauty of the scenery to which the citizenry is entitled. The propensity of youth to dare where the danger is not seemingly impending is well known. Ordinary fences and barriers are scaled by boys notwithstanding. It would be impracticable for the city to place fences or barriers around every object or place, possibly or imaginably dangerous to youth. It may be that a pond or pool is potentially dangerous, but so a tree may be or a terrace or dry land. Parks are maintained for the recreation and refreshment of the public, and water and ponds in parks divert and refresh people. If unsightly fences and barriers are erected around waters, and any of them probably would

be unsightly, the symmetry of the landscape would be marred and the recreation and refreshment of the people lessened. If it is negligence to fail to place barriers around ponds or waters into which a youth may fall and drown, why is it not negligence to fail to erect barriers to prevent children from climbing trees from which they may fall to their injury or death, or to fail to place barriers around a thorny bush or shrub against which youth may prick their flesh and thus possibly develop an infection causing death? Such precautions would not only be impracticable, but would mar the symmetry of the landscape of the park and impair recreation. The negligible danger arising from youth drowning in ponds without barriers in public parks must be subordinated to the pleasure and recreation of the people as a whole. We do not think that a city is necessarily negligent because it fails to place a fence or barrier around a pond, either natural or artificial, in a public park, although situations may arise that develop negligence. [See 40 A. L. R. 488; 36 A. L. R. 224.] The cases of Capp v. City of St. Louis, 251 Mo. 345, 158 S. W. 616, 46 L. R. A. (N. S.) 731, Ann. Cas. 1915C, 245, and Davoren v. Kansas City, 308 Mo. 513, 273 S. W. 401, 40 A. L. R. 473, are not in point. The Capp case is based on the maintenance of a hole in the nature of an entrapment in a shallow stream in which children were accustomed to wade. The Davoren case is based on the creation and maintenance of a nuisance by the city. Be the determinations in those cases as they may, we do not think that the failure to place a fence or barrier around the pond in question constituted negligence. The drowning did not result from an unusual or hidden danger, for conditions were known to the boys.

II. It may be that under some circumstances a city would be negligent in failing to place signs in proximity to the ponds advising and warning immature children that the condition of the ice rendered it dangerous. In passing, we deem it advisable to say that it is the general rule that a boy, six years of age, cannot be guilty of contributory negligence (20 R. C. L. 127, sec. 106), and it follows that Leslie Volz, in attempting to aid his brothers in their predicament, was not guilty of such. But the boys were aware that the ice was dangerous and unsafe, for they were so warned by Ralph Walters, so the evidence shows. Moreover, Elmer Volz observed Ralph break through the ice and the boys knew that the water on the ice covered the soles of their shoes. The warning they thus received was tantamount to a warning resulting from the posting of signs. It results that the failure of the city to place signs in proximity to the pond, as a warning that the ice was dangerous, was not the proximate cause of Leslie's death,

for warning signs could not have given the boys more knowledge than they had of the conditions confronting them.

III. Plaintiffs petition avers that defendant negligently failed to provide a watchman to warn children of tender years of the danger incident to walking upon the ice, and of the depth of the pond and of the likelihood of the ice breaking, when defendant knew, or by the exercise of ordinary care could have known, that children were in the habit of going upon the ice to slide. Plaintiffs offered to prove, in support of the averment, that the city failed to provide a watchman on the day in question to warn children from the pond or to advise them of the danger of playing around the pond or going upon the ice on said pond or about the depth of the water in said pond, but the court on objection refused to permit plaintiffs to make the proof and rejected the offer of proof.

. What we have said in the paragraph immediately preceding is applicable to this contention. A warning in regard to the condition of the ice would not have imbued them with greater knowledge than they had. The boys knew or were presumed to know that if the ice broke they would fall into the water, and that in water people drown. The drowning of Leslie was not the result of a lack of knowledge of the action of water, or the lack of knowledge of the dangerous condition of the ice. Certainly, the dire result was not expected, but the boys knew that the ice was melting and unsafe, and that people drown in water. It may be that a watchman, if there and advised of their intention, by threats and force, could have prevented them from going upon the ice, but the duty of the city extended no further than to warn the boys of the danger, and they had knowledge of that. We do not think that the failure to provide a watchman to warn them of the danger was the proximate cause of the drowning.

The order of the trial court sustaining the motion for a new trial is affirmed, and the cause is remanded. *Davis* and *Cooley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. *Blair, P. J.*, and *White, J.*, concur; *Walker, J.*, absent.