HENRY DUTTON ET AL., RESPONDENTS, v. CITY OF INDEPENDENCE, APPELLANT.—50 S. W. (2d) 161.

Kansas City Court of Appeals. August 26, 1932.

Certiorari denied by Supreme Court, August 5, 1932.

*Burrus & Burrus* and *Mosman, Rogers & Buzard* for respondent.

*John F. Thice, L. T. Dryden* and *Wm. J. Dryden* for appellant.

TRIMBLE, P. J.—Plaintiffs, as the parents of a four-year-old son, Henry Dutton, Jr., brought this action against the city of Independence to recover for the death of said son, who on May 26, 1929, fell from the top and end of the city's concrete culvert, a distance of seven feet, to the rock or concrete bottom of the stream underneath said culvert, fracturing his skull from which injury he died shortly thereafter.

A trial of the issues involved resulted in a verdict for plaintiffs in the sum of $6000 and the city has appealed.

The petition alleged that South Willis street, running north and south, and West South avenue, running east and west, were public thoroughfares that intersected each other in said city; that the city had built and maintained a concrete culvert or sewer extending under and across said intersection in a northeasterly direction, the northeast end of which culvert extends beyond said street and is located on private property not owned by the city, said private property being north of said West South Avenue and east of said South Willis street; that the top of said culvert consists of a thick, flat slab of concrete ten or twelve feet wide and some twelve or fifteen feet above the bed or course of a shallow creek the bottom of which lay directly under the northeast end of said culvert and for a little distance to the northeast, said bottom consisting of flat ledges of limestone.

It was further alleged that the son, while playing in the yard and premises above and adjacent to the northeast part of said culvert, where he had a right to be (shown in evidence to be his grandfather's premises whom he had come to visit in company with his mother some five minutes before his fatal injury) fell from the top of said culvert to the limestone bed of said creek and was killed as the direct result of the carelessness and negligence of said city, and its neglect and failure to properly perform its duties as hereafter stated.

The petition in stating the negligence charged alleged that—
". . . it was the duty of the defendant city to erect and maintain a proper and sufficient fence, barrier, or railing about the top of said concrete culvert, to prevent a child or children playing about in said yard of said private premises adjacent thereto, from falling from the top of said culvert, that this said condition constituted a nuisance; but that said city, in total disregard of its duties, as aforesaid, carelessly and negligently failed to provide a fence, barrier, or railing about said concrete culvert, and created a condition dangerous to children and others in that the defendant knew or by the exercise of ordinary care should have known of said facts, circumstances, and conditions in time so that, by the exercise of ordinary care, said conditions could have been averted, rectified, and remedied, and the death of said child averted."

The answer contained a plea of contributory negligence on the part of the child's parents in allowing it to play on the premises onto which the end of the culvert extended; and also a statement that the concrete sewer culvert was constructed in "accordance with the general plan adopted by the city for the construction of culverts." Contributory negligence is not one of the bases of defendant's attack on the judgment, hence it need not be considered further. As to the plea that the culvert was constructed in accordance with a general plan adopted by the city for such structure,

it may be observed that the negligent omission, defect, or danger-
ous feature of the culvert does not inhere in the construction of
said culvert, but exists in the neglect to provide a rail or guard
at the top and end of the culvert to prevent one from falling there-
from to the rocky bed of the stream beneath. This is not such a case
as can properly come under the principle defendant has in mind
concerning a construction in accordance with a legislative plan.
To apply that principle here would be tantamount to holding that
as the city had constructed culverts according to a plan which per-
mitted it, after construction, to omit proper guards where needed,
therefore it could not be held liable for such negligent omission
since the city had legislatively planned and decided upon such
negligence. The principle invoked has no application to the situa-
tion here presented. Consequently the court did not err in re-
fusing to permit the defendant to show the general plan adopted
by the city for the construction of concrete culverts.

The record discloses that before the concrete culvert was built,
about seven years prior to the trial, the stream over which the
culvert was erected was crossed by an old wooden bridge in the
street which had railings or bannisters on its sides. The culvert
was built in 1925 to improve the street; the top of the culvert
forming the surface of the street over the stream underneath. Said
top consists of a flat concrete slab about ten or twelve feet wide,
and the top of this slab at the northeast or open end of the culvert
is seven feet above the rock bottom of the stream. The east end
of the northeast corner of the culvert is two and nine-tenths feet
below the sidewalk, and it is five feet from the unprotected end
of the culvert at the east side directly south to the north corner
of the sidewalk, and on the west side of the street it is eleven and
two-tenths feet from the corner of the culvert to the sidewalk. The
distance from the outside edge of one sidewalk to the outside edge
of the one on the other side of the street was 50 or 60 feet, and
the end of the culvert extended from the edge of the street over
into the property (being the premises of the little boy's grand-
father) a distance of from five to six and one-half feet. While the
ends of the culvert extended out onto private property, yet, as
constructed and actually existing on the ground, the ends of the
culvert are apparently a part of the street since there is nothing
to mark the line of the street or the line between the street and
the abutting property. The north or northeast end of the culvert
from which the little fellow fell is adjacent to the sidewalk with
no fence or other obstruction between them and there is a drop of
from two to two and one-half feet from the sidewalk to the top of
the culvert, which drop is abrupt. The bottom of the creek bed
at the north end of the culvert was originally dirt but when the

culvert was built the bottom of the creek at that point was made of concrete.

After the culvert was constructed, no fence, barrier, guard or railing was put up along the ends of the culvert to prevent persons or children on the culvert and at its end from falling off to the bottom.

The mother of the little fellow who was killed took him and perhaps two others of her children (one of them a babe in arms) from her home to the home of her parents about a block-and-a-half away, said parents occupying the property into which the northeast end of the open and unprotected culvert extended for a few feet. She went into the house with the children and proceeded to the kitchen where her mother was, and had been there only about five minutes when the boy, escaping unobserved, from the house to the yard and to where the culvert opening was, and very shortly thereafter an alarm was sounded that the child had fallen from the top of the unprotected end of the culvert and he was found in the bed of the stream below. There was a pathway leading from the house to the sidewalk at the west side of the north end of the culvert, and in coming to the grandfather's house the mother with her children left the sidewalk at this point, stepped across the end of the culvert and followed this path to the house.

There was evidence that numbers of children going to two schools in that vicinity passed there daily, and also that they played there at the north end, and in the stream, ever since the culvert was constructed. There was evidence also that before the accident, the grandfather of the child had complained of the dangerous unprotected condition of the open end of the culvert, the top of which was used as a passway or approach to his house and to his outhouse, and he had asked the mayor of the city that a railing or guard be placed there. But this was not done.

Defendant contends: (1) that its demurrer to the evidence should have been sustained because no case was made under the law, (2) that plaintiffs' instruction No. 1 was broader than the petition and submits the case upon a theory different from the one embodied therein, (3) that the court erred in admitting over defendant's objection evidence of the *use* of the street adjacent to the end of the culvert, and (4), (as heretofore stated), that the court erred in refusing to permit defendant to show that the construction of the culvert was in accordance with the general plan adopted by the city.

As to the point that no case was made, this seems to rest upon the claim that the plaintiffs' case was bottomed upon the charge that the end of the culvert without a railing, guard, or fence, was "an attractive nuisance" and within the rule of the "turntable cases."

We think that defendant's theory that the charge is within the rule of an attractive nuisance or of the turntable cases is not well founded. The actionable wrong charged against the city is that in constructing the open and unprotected end of the culvert with such a fall adjoining it, *at the place where it was,* the city created a dangerous situation or condition and then negligently failed to guard it. For this, and the injury which resulted, the defendant is liable. The turntable doctrine has no application to such a case. [Capp v. St. Louis, 251 Mo. 345, 360-361.] The plaintiffs' son was not a trespasser in being where he was, but was on his grandfather's premises on a visit and he had a right to be there, and the city, in constructing the culvert and leaving it unguarded was *not* doing something which it had a right to do thereby creating *a condition which necessarily could not be guarded against,* but it built a concrete culvert, or sewer, or underground channel, for a stream across the intesection, with the end of the top of said culvert forming a precipice seven feet high closely adjacent to the street and on a pathway used by passers where one might easily fall therefrom, and *negligently left that situation wholly unguarded* although warned of the danger and requested to guard against it. This made it liable. [Davorne v. Kansas City, 308 Mo. 513; Nation v. City of St. Joseph, 5 S. W. (2d) 1106; Jensen v. Kansas City, 181 Mo. App. 359; Benton v. City of St. Louis, 217 Mo. 687; Godfrey v. Kansas City Light & Power Co., 299 Mo. 473.] Even if it could be said that the petition is vague and uncertain as to what is the precise theory on which the petition is drawn (which we do not think it is), still this cannot avail defendant now, since no objection thereto was made in the trial court. [Harrison v. Self, 103 Mo. App. 286.] In such case defendant will be held to the theory adopted in the trial below. [Shaw v. American Ins. Co., 33 S. W. (2d) 1052.] And as shown above, and especially by the first three cases above cited, the case was not tried on the doctrine of the "turntable cases."

For the foregoing reasons it is manifest that instruction No. 1 for plaintiffs is not broader than the petition nor does it submit the case upon a different theory from that contained in the petition. The instruction told the jury that if they found that the construction and maintenance of the culvert or sewer *without any guard or railing on the end* created a condition that was *dangerous and not reasonably safe* to children and others using the same and city *knew* or by the exercise of ordinary care *should have known* this fact, and that it was negligence on the part of the city to neglect, or to fail to exercise ordinary care, to provide a reasonable fence or barrier or railing along the end of said culvert, and said Henry Dutton, Jr., fell therefrom and was killed as a result thereof, and

that notice was served on the city, etc., then they should find for the plaintiffs. The instruction follows the petition, and is not broader than it.

There was no error in the admission of the evidence as to the *use* of the street adjacent to the end of the culvert and of the culvert and as part of a pathway. The ground of the objection is that the evidence was inadmissible for the same reason that instruction No. 1 is said to be erroneous. Since the latter is held not erroneous, the ground of objection to the evidence fails, or is non-existent. Defendant says the culvert was not built by the city to be *used* by the people at all, but as the top of the culvert forms the surface of the street over the stream, it certainly was intended to be *used* to that extent. It is true the fatally injured boy was not a user of the street at the time he fell; but the evidence was not introduced as bearing on that, but to show that the city was chargeable with negligence in leaving such a danger unguarded in a place like that so closely adjacent to the street where it could be, and was, used by those who had occasion to pass along that way. If it was not negligence to do that, then the city could escape liability by merely exending the unguarded dangerous end a foot or two, or say five feet, into private property with nothing to separate the edge of the street from the private property line, thus leaving the dangerous trap fully as dangerous as if the end had been left open and unguarded within the street. It is not seen how the city can be absolved by merely putting the danger spot just outside the dedicated line of the street and leaving it unguarded, especially when it knew throughout the years of its subsequent maintenance that it was part of a pathway used by persons in going to abutting or adjacent property.

Reversible error has not been shown or disclosed, hence the judgment must be, and is, affirmed. The other judges concur.