**Terry Wayne TAYLOR, a Minor, by His Mother and Next Friend, Marjorie Cooper, Appellant,**

v.

**KANSAS CITY, Missouri, a Municipal Corporation, Respondent.**

No. 49406.

Supreme Court of Missouri,

En Banc.

Nov. 14, 1962.

Jack N. Bohm, Kansas City, for appellant.

Keith Wilson, Jr., City Counselor, Kansas City, Timothy D. O'Leary, Asst. City Counselor, Kansas City, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff, a minor, suing by next friend, had verdict and judgment against Kansas City, Missouri, in the sum of $6,000 for personal injuries sustained when he fell into a dry, unfenced concrete wading pool located in one of the city's parks immediately adjacent to the playground of a public school in which plaintiff was a pupil. The trial court, on motion of defendant, set aside the judgment on grounds of error in overruling its motion for a directed verdict filed at the close of all the evidence in the case and entered judgment for defendant. Plaintiff appealed to the Kansas City Court of Appeals. There the judgment was reversed and the cause remanded for a new trial on the issue of liability only. 353 S.W. 2d 814. On application of defendant, the case was transferred to this court in accordance with the provisions of Art. V, § 10, of the Constitution of Missouri, V.A.M.S..

The casualty occurred about 8:00 a. m. on May 13, 1958. Plaintiff, then seven years

and nine months of age, was in the second grade at the Karnes Elementary School, situate at 550 Charlotte Street, which he had also attended through the first grade. School began at 8:30 a. m. It was the custom of his mother, who was employed as a saleslady, to bring him and his older brother, Joe, and his younger sister each school day to a nursery located one block from the school about 7:45 a. m., where they would remain until it was time for them to walk to the school, arriving around 8:15, at which hour some of the teachers also arrived and began supervision of the students. On the morning of May 13, however, plaintiff and his older brother, Joe, arrived before 8:00 and began to play ball with some of Joe's companions, all of whom were in the seventh grade, on the school playground situated north of the front of the school building and extending back southward along the west side thereof.

The school, as stated, faced north. The ground in front thereof extended north from the front entrance for a distance of 61 feet, where there was an east-west curb extending along the entire north boundary of the school grounds. At the base of that curb, a concrete apron two feet in width extended outward, forming a drainway, which was two inches deep at the northwest corner of the school grounds and gradually deepened until it was about 8 or 12 inches at the northeast corner. Columbus Park, in which the swimming pool was located, lay unfenced immediately north of the school grounds. Pictures introduced in evidence show the swimming pool (built in 1921) to be located near the southwest corner of the park. It is 60 feet by 80 feet in dimension, has rounded corners, is 3 feet, 8 inches, in depth, and the top wall thereof projects 7 inches above the level of a paved area surrounding the entire pool. The pool and the portion of the top wall extending above the level of the paved area surrounding it are made of white cement, which causes the pool to be readily distinguishable from the darker pavement surrounding it; no one looking forward as he approached

it could avoid seeing it. On the north side of the pool, two sets of concrete steps lead from the top of the wall of the pool to the bottom thereof. The nearest edge of the pool to the school grounds, at the point where plaintiff was playing ball, was 19 feet north of the curbline separating the school grounds from the park. An area set apart in the park for children's ball games is located north of the swimming pool.

The city presently maintains in its city-wide park system 18 wading pools, called "junior wading" and "swimming pools", seven of which are fenced and 11 of which are unfenced. Pools built in the last 5 to 7 years are combination pools—a "wading" and "junior" pool—with a toilet or storage house between them. The junior pools are not as deep as the pool here in question. (Testimony adduced in behalf of defendant and not questioned by plaintiff was to the effect that these "combination" pools are of more modern design. The primary purpose of placing fences around them is to afford the supervisors better control of the children *using* them; the secondary reason is to keep the children from walking on dirty areas beyond the pool and then "tracking" dirt and sand from sand boxes back into the pool.)

Plaintiff was a good student, consistently above average. Since entering the first grade, he was familiar with the pool, its location and depth, saw it every day he went to school. He, as other children, frequently waded in it, ran around and played in it, and bounced balls from its walls when it was empty.

On the morning in question, plaintiff was standing in the northern area of the school playground, catching a ball as it was thrown or batted in his direction. A ball that was over his head came toward him from the south and he began to walk backward so that he could catch it. As he came to the north curbline of the school grounds, he looked backward, stepped over the curb and again walked backward at least 19 feet

until he bumped against the wall of the pool, tumbled backward into it and his head struck its bottom, whereby he sustained injuries. He knew, as he thus walked backward, that he might trip over or run into something.

Joseph P. White, a witness in behalf of plaintiff, testified: He was principal of Karnes School when plaintiff was injured. The children, as a part of school activity, played ball under school supervision during the school day recesses in the area provided for that purpose in Columbus Park. There was not ample staff to supervise them before 8:15 in the morning or after school hours and they were "encouraged" not to arrive at school before 8:15 and to go home at the end of the school day. But, despite those admonitions, they did play in the park, as many others did, before and after regular school hours and over weekends. The city was never asked to fence around the pool area or around any portion of the park. Children will suffer some injuries wherever they play, but he never heard of anyone, other than plaintiff, falling into the wading pool.

The question of immediate import is whether the evidence viewed from the standpoint most favorable to plaintiff made a submissible issue of negligence on the part of defendant in maintaining the empty wading pool in Columbus Park without a "guard, wall or fence around said pool", as alleged in the petition and submitted to the jury. Plaintiff's theory was basically that adopted in the opinion of the court of appeals. The cases relied upon by plaintiff were: Capp v. City of St. Louis, 251 Mo. 345, 158 S.W. 616, 46 L.R.A.,N.S., 731; Doran v. Kansas City, Mo.App., 237 S.W.2d 907; Bronson v. Kansas City, Mo.App., 323 S.W.2d 526; Nation v. City of St. Joseph, Mo.App., 5 S.W.2d 1106; Barker v. East Side Building Corp., Mo.App., 344 S.W.2d 299; Volz v. City of St. Louis, 326 Mo. 362, 32 S.W.2d 72.

In a supplementary brief filed by defendant in this court, it is noted that plaintiff and the opinion of the court of appeals placed strong reliance upon the Capp, Doran and Barker cases, supra. Defendant contends: (1) that the facts in those cases are completely distinguishable from the facts in this case and do not support the contention that plaintiff made a submissible case; and (2) that the Volz case, supra, and Bagby v. Kansas City, 338 Mo. 771, 92 S.W.2d 142, neither of which is mentioned in the court of appeals opinion, are controlling and clearly show that plaintiff did not make a submissible case.

We have concluded that the contention of defendant must be sustained. A brief summary of the facts upon which each of those cases was decided will, we think, serve to point up the conclusion here reached.

In the Capp case, the evidence showed that the River Des Peres ran through Forest Park in the City of St. Louis. At ordinary stage, its flow was insignificant and children, as the city knew, were wont to and safely could wade in it. However, the city long ago had constructed and thereafter maintained a storm sewer which emptied into the Des Peres at the point where plaintiffs' minor decedent son drowned. The flow from the sewer and the debris therein contained caused a deep water-filled hole to form at the juncture of sewer with the river, the treacherous depth of which was not apparent to children wading along the Des Peres. Decedent, wading in the safe portion of the river, came upon and without prior knowledge of the pool thus formed stepped into hidden depth and drowned. The city, with knowledge of the danger thus created, had done nothing to warn or otherwise prevent children wading in the Des Peres from falling into this dangerous trap. The court held the law required the city to keep its park in a reasonably safe condition for those who frequented it, especially children, and concluded that a submissible case of the city's negligence in that respect was made.

In the Doran case, Brush Creek, a drainage ditch, ran through a densely populated area of Kansas City. Its bed was paved with concrete throughout most of its course and children, as the city knew, were accustomed to wade along the paved bottom. At a point, however, the concrete pavement ended, resulting in a hole filled with dirty water, which covered a part of the concrete bottom as it extended beneath a bridge and concealed the abrupt end of the concrete and the dangerous depth of the hole. The city was aware of the condition but had done nothing to remove the danger or to prevent waders from falling into the hole. Plaintiffs' two minor sons were wading along the concrete bed, neither knowing of the dangerous hole. One of them fell into it. The other attempted to rescue him. Both drowned. The court, as in the Capp case, supra, held a submissible case was made.

In the Bronson case, it was shown that Kansas City permitted flare pots to burn both day and night and during windy weather to warn of an excavation made in the course of repairing a sidewalk along which small children were known by the city to play. Plaintiff, a child 4½ years of age, while playing in the daytime, was burned by one of the flares. The court held that the care required of the city to avoid injuring children increased with their inability to protect themselves and that the facts made a submissible case of the city's negligence.

In the Nation case, it was shown that a boy drowned while playing in a pool of water located in the bottom of a running stream which carried only a small amount of water, except during and after rains. The city had knowledge that heavy rains, which had fallen some two weeks prior to the drowning, had increased the depth of the pool to about five feet and that children were continuing to wade in the stream, but had taken no steps to protect them from the hidden danger of drowning in the pool. It was held that the evidence made a submissible case.

In the Barker case, the defendant erected a merry-go-round on a playground maintained by it for the entertainment of children of parents occupying its apartments. The platform of the device was supported by iron rods radiating upward from a center shaft to the outer edge of the platform. The device, however, was not erected on level ground, resulting in one side of the platform being higher above the ground than recommended by the manufacturer. This defect permitted children, as defendant knew, to get under the device and, lying on their backs, to rotate the platform by pedaling the radial rods with their feet. In so doing, a child was injured. It was held that the defective manner of construction made a submissible case of defendant's negligence.

We now consider the cases relied upon by defendant. In Volz v. City of St. Louis, 1930, 326 Mo. 362, 32 S.W.2d 72, plaintiffs' decedent, a minor aged 11 years, fell through the ice covering a pond of water maintained by the city in Carondelet Park and drowned as he attempted to rescue two of his younger brothers, who, at play on the ice, had broken through. Plaintiffs contended the city was negligent in maintaining the pond without providing a fence, rail or guard around it so as to prevent children of tender years from going upon the ice. The court held that the city was by law required to exercise ordinary care to maintain public parks in a reasonably safe condition as to children attracted there, but concluded that a submissible case of failure of the city to exercise reasonable care was not made. In reaching that conclusion the court said, loc. cit. 73: "It would be impracticable for the city to place fences or barriers around every object or place, possibly or imaginably dangerous to youth. It may be that a pond or pool is potentially dangerous, but so a tree may be or a terrace or dry land. * * * If it is negligence to fail to place barriers around ponds or waters into which a youth may fall and drown, why is it not negligence to fail to erect barriers to prevent children

from climbing trees from which they may fall to their injury or death, or to fail to place barriers around a thorny bush or shrub against which youth may prick their flesh and thus possibly develop an infection causing death? Such precautions would not only be impracticable, but would mar the symmetry of the landscape of the park and impair recreation. The negligible danger arising from youth drowning in ponds without barriers in public parks must be subordinated to the pleasure and recreation of the people as a whole. We do not think that a city is necessarily negligent because it fails to place a fence or barrier around a pond, either natural or artificial, in a public park, although situations may arise that develop negligence. See 40 A.L. R. 488; 36 A.L.R. 224. The cases of Capp v. City of St. Louis, 251 Mo. 345, 158 S.W. 616, 46 L.R.A.,N.S., 731, Ann.Cas.1915C, 245, and Davoren v. Kansas City, 308 Mo. 513, 273 S.W. 401, 40 A.L.R. 473, are not in point. The Capp Case is based on the maintenance of a hole in the nature of an entrapment in a shallow stream in which children were accustomed to wade. The Davoren Case is based on the creation and maintenance of a nuisance by the city. Be the determinations in those cases as they may, we do not think that the failure to place a fence or barrier around the pond in question constituted negligence. The drowning did not result from an unusual or hidden danger, for conditions were known to the boys." It was further held in the Volz case that neither warning signs nor the placing of a guard at the pond would have availed anything. This, for the reason that although the six year old brother who first broke through the ice could not be chargeable with contributory negligence and neither could the brother who attempted to save him, yet, as other evidence in the case showed, all of the boys knew the ice was dangerous; consequently, a warning sign or a guard could accomplish no more than they knew.

The case of Bagby v. Kansas City, 338 Mo. 771, 92 S.W.2d 142, adhering to the law announced in Volz, supra, held that the failure of the city to post warning signs advising the public of the danger of climbing along a rock cliff in one of the city's parks was not negligence and that the city was not liable for injuries sustained by a 10½ year old boy when a rock became loose and rolled down the cliff as the boy climbed it. In so holding, the court noted the distinction between the case under consideration and the Capp and Davoren cases, saying they were correctly ruled on the theory that the city in those cases had created or permitted a dangerous entrapment to exist. The court also noted that the Nation case, supra, was contrary to the holding in the Volz case and refused to follow it.

We have been cited to no Missouri case nor have we found one that tends to detract from the holdings in either the Volz or Bagby cases, supra. Neither have we been offered any rationalized distinction between the principles declared as applicable in the Volz and Bagby cases and the principles that should be applied in the instant case.

The fact that the school was located adjacent to the park is of no significance, nor did that fact enlarge the city's duty. The park itself carried an open invitation to all children to use its facilities. But to hold the city liable under the facts shown in this case would, in effect, make it an insurer of the safety of all children in the park irrespective of how they get hurt, whether in climbing a fence, falling from a swing, a tree, down a decline, tripping over a curb, or colliding with any obstacle while walking or running backward, if an inventive pleader and a sympathetic jury could conceive of a means by which the casualty could have been prevented, however impracticable it might be.

The judgment of the trial court is affirmed.

All concur.