Samuel CHARD, a Minor, by his Mother and Next Friend, Dorothy Chard, Appellant,

v.

CLARKSON CONSTRUCTION COMPANY, a Corporation, Respondent.

No. 23943.

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

Laurence B. Silks, John R. Monaghan, Silks & Silks, Kansas City, for appellant.

A. Warren Francis, Lloyd A. Hamrick, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is a suit by Samuel Chard, a minor, through his mother as next friend, to recover damages for personal injuries allegedly caused by the negligence of defendant Clarkson Construction Company. This cause was submitted to the jury and it returned a verdict in favor of plaintiff for $11,200. Defendant offered no evidence and elected to stand upon its motion for directed verdict which was presented at the close of plaintiff's evidence. After due consideration of defendant's after-trial motions, the court sustained its motion for directed verdict, set aside the verdict of the jury and entered judgment for defendant. In the alternative, the court granted de-

fendant a new trial for error in the giving of Instruction No. 1. The court specified no reasons for its actions.

The accident in which plaintiff claimed he was injured occurred on Sunday, September 11, 1960. Through answers to interrogatories we learn that defendant Clarkson Construction Company had received a contract from the State Highway Commission of Missouri to do the grading and drainage construction incident to the building of the Southeast Freeway (Interstate Highway No. 70) in Kansas City, Missouri. Defendant had commenced but had not completed its work under that contract. During August and September, 1960, Clarkson had excavated a cut or embankment approximately 10 feet deep along an east-west line "just south of and immediately adjacent to the south property line" of a residence property and lot known as 5916 East 30th Street, Kansas City, Missouri. The side of the cut adjacent to this property was not perpendicular but was sloped to a degree of ¼ to 1. There was no evidence as to how close the side of the cut was to the 30th Street property. Immediately prior to September 11, 1960, defendant had dumped "rock and earth" to make a fill at this location. The fill had been "compacted and graded". The record does not reveal the depth of the cut after the August "fill", but it was filled again in October. The cut was barricaded and lighted at Topping Street, about two blocks away.

The property (5916 East 30th Street, Kansas City, Missouri) on September 11, 1960, was the residence of Mrs. Bernice Miller, plaintiff's aunt. Plaintiff at the time was six years of age. His father and mother had gone to New Jersey to attend a funeral. The plaintiff Sammy and his two brothers had been left in the care of their paternal grandmother Mrs. Helen Chard.

On the afternoon in question the grandmother and three boys came to 5916 East 30th Street for a visit. According to Mrs. Miller her two small children and her three nephews played in the house until 7:30 p. m. when the grandmother and her three charges started to go home. The children were told to "go to the car", but instead went into the yard. Continuing her testimony Mrs. Miller said: "* * * and we saw the kids come running, hollering that Sam had got hurt". Mrs. Miller said that her son on the next day "showed her where the accident happened", but the son did not testify. This evidence was properly stricken.

Mr. Wm. J. Chard, plaintiff's father, testified but knew nothing about where the accident occurred. The same comment applies to the testimony of Mrs. Dorothy Chard, the boy's mother. She was in New Jersey at the time of the accident. During her testimony she was handed a photograph identified as plaintiff's Exhibit 3. She said this was a picture of the place where Sammy fell; that Sammy, a few days after the accident, had told her "this was where he fell". This testimony is of course utterly inadmissible and the trial court so ruled.

Apparently there was only one eyewitness to the accident and that was the plaintiff himself who was six years old at the time he fell, and nine years of age at the time of trial. Because he was the only eyewitness and because his testimony is so vital we shall set it forth almost in toto. Sammy was first interrogated by the court to determine if he was a competent witness. It was ruled he was competent. Among the questions put by the court and answered by Sammy are these:

"Q. Tell me this, do you remember this accident you had?

(Witness shakes head).

"Q. No? You do not?

(Witness shakes head).

"Q. Do you remember going out there and falling at all?

(Witness shakes head).

"Q. No? What is your lawyer's name here?

(No answer).

"Q. Mr. Silks? You have forgotten?

THE COURT: Are there any questions you want to ask him, Mr. Silks?

MR. SILKS: I have no questions, Your Honor.

"Q. (By The Court) Has your mother asked you about this accident, how it happened?

(Witness shakes head).

"Q. No? If I ask you to tell me how you hurt your arm, what would you tell me? A. Fell in a hole.

"Q. Do you remember falling in the hole?

(Witness shakes head).

"Q. You do not?

(Witness shakes head).

"Q. Do you remember what you were doing just before you fell?

"A. Catching lightning bugs.

"Q. Catching lightning bugs?

(Witness nods head)".

Plaintiff was then questioned by plaintiff's attorney as follows:

*DIRECT EXAMINATION* BY MR. SILKS

"Q. Would you state your name, please?

"A. Sammy Howard Chard.

"Q. How old are you, Sam? A. Nine.

"Q. How old were you when you had your accident? Do you know?

"A. Six.

"Q. Do you know what it is to tell the truth? Do you know what happens to you if you don't tell the truth?

"A. Go to jail.

"Q. You are going to tell the truth, aren't you?

(Witness nods head).

"Q. Do you remember hurting your arm?

(Witness shakes head).

"Q. You don't remember?

(Witness shakes head).

"Q. Do you know where you were when you did hurt your arm?

"A. In a hole.

"Q. Do you know how you got in the hole? A. No.

"Q. Do you know what you were doing right before you got in the hole? A. Trying to catch lightning bugs.

"Q. Do you know where you were at the time, Sam, do you know where, whose home, or anything like that?

"A. At my aunt's.

"Q. Did you know whether or not there was a ditch or embankment or a drainage ditch of any kind where you fell?

"A. No.

"Q. You didn't know that before you fell? A. No.

"Q. Had you ever seen this ditch or anything like it there before? A. No.

"MR. SILKS: I think that's all".

As a result of the fall, plaintiff suffered a broken arm. No issue or controversy is

before us as to the injuries and hence we shall not mention them any further.

██ Plaintiff says that since he had the verdict and we are reviewing the evidence of the court in ordering judgment for defendant, we must consider the evidence in the light most favorable to plaintiff and give him the benefit of all reasonable inferences from that evidence. Layton v. Palmer, Mo., 309 S.W.2d 561, 564, 66 A.L.R.2d 1242. We agree that such is the rule. However, plaintiff carries the burden of proof and there must be some substantial evidence covering the essential elements of proponent's case, else it should not be submitted to the jury.

█ Unless the evidence shows that plaintiff fell into the cut or down the embankment made by Clarkson there is no liability and the court rightly set aside the verdict and entered judgment for the defendant. If plaintiff entered upon the area of the cut and at the time he was either a trespasser or even a "mere licensee", then the court erred in giving Instruction No. 1, since it charged defendant with the duty to exercise ordinary care. It was held in Glaser v. Rothschild, Mo., 120 S.W. 1, 3, 22 L.R.A.,N.S., 1045, that leave and license "bestows no right to care". In Gilliland v. Bondurant et al., 332 Mo. 881, 59 S.W.2d 679, plaintiff, when injured, was a visitor inspecting defendant's bakery. The court said:

"Ordinarily, one who because of his own inclination goes into an industrial plant merely to observe its operation, to satisfy his own curiosity, or to learn how it operates solely for his own benefit, is a licensee only, regardless of whether he wanders around by himself or is, through the owner's courtesy, furnished a guide. Under those circumstances, it seems to be plain that, unless some further duty is imposed by statute, the only duty of the owner is that he must not willfully or wantonly injure him, or

knowingly let him go into a hidden peril, or otherwise, by an affirmative negligent act, injure him after his presence is or should be discovered in a position of danger. He owes him no affirmative duty of care to protect him".

This quotation was set forth, adopted and approved by the Supreme Court En Banc in Anderson v. Cinnamon et al., 365 Mo. 304, 282 S.W.2d 445, 448, 55 A.L.R.2d 516, and again in Patterson, Jr. etc. v. Gibson, Mo., 287 S.W.2d 853, 856.

Plaintiff strongly relies upon and directs our attention to the case of Dutton et ux. v. City of Independence, 227 Mo.App. 275, 50 S.W.2d 161, 164. In that case the City constructed a culvert across one of its streets which was a public thoroughfare. The end of the culvert extended onto private property but from its top there was a precipitous drop of 7 feet to the bed of the stream. Plaintiff's son, a child of 4½ years, fell from the top of the culvert to the bed of the stream, sustained a fractured skull and died as a result. A recovery by plaintiff was affirmed on appeal. Two material differences in this case from our case are immediately apparent. First the evidence is overwhelming and undisputed that the child fell from defendant's culvert top. Second, the street where the culvert was located was open to the public and neither the street nor the culvert was in the process of construction. Under such circumstances the child's status was more than that of a trespasser or mere licensee. In our case plaintiff's counsel seeks to relieve plaintiff from the responsibility of being a trespasser or mere licensee by asserting that the child fell from the aunt's property into the cut and therefore never did voluntarily or actually enter upon the Clarkson premises prior to the fall. There is no proof of this fact and we are not impressed by that speculation.

There is no direct testimony or evidence that plaintiff's injuries were caused by a fall onto or in the cut or embankment made

by the Clarkson Construction Company. The only eyewitness to the fall was plaintiff himself. In his testimony, responsive to both the court and to his counsel's inquiries, he said he was in his aunt's backyard "trying to catch lightning bugs". He said he did not know whether there was a ditch or embankment where he fell, that he fell in a hole, but did not remember how he got into it. There was testimony that this area was wooded, but the aunt's property had been cleared. The other children were in the yard and also playing. They went to the house and reported that Sammy was hurt. Apparently Sammy also picked himself up and returned to the house. It is questionable if a six year old child fell into or down a ten foot embankment and suffered a broken arm, if he would instantly get up and climb the embankment and return to the house. No witness testified as to any marks within the embankment indicating a spot where plaintiff might have fallen.

A case can be made on circumstantial evidence. It has frequently been stated that the facts and circumstances must be such that the necessary facts to support a verdict may be inferred and must reasonably follow, and that the evidence must exclude guesswork, conjecture and speculation as to the existence of the essential facts. Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 34; Lappin v. Prebe et al., 345 Mo. 68, 131 S.W.2d 511, 514.

■ While it is not in this state required that the circumstantial evidence proof rise to a degree of certainty which will exclude every other reasonable conclusion, it is, nevertheless, required that the proof should have such a tendency since the force and effect of circumstantial evidence depends upon its incapability of explanation or solution upon any other supposition. The rule as just stated has been declared by our courts many times. In Berry v. Harmon, Mo., 323 S.W.2d 691, 695, the court said:

"There can be no objection to one's establishing negligence and a cause of action by circumstantial evidence: 'Of course facts essential to a recovery may be proved by circumstantial evidence, but the shown circumstances must be such that the necessary facts may be inferred therefrom and they must reasonably follow. The evidence must "exclude guesswork, conjecture, and speculation as to the existence of the necessary facts" ' ".

The Supreme Court En Banc in Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95, 100, 103, said it this way:

"In specific negligence cases turning on circumstantial evidence the proof should establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn. (citing cases)".

We are unable to conclude from this testimony that plaintiff fell in the cut or down the embankment. To reach such a conclusion we believe any trier of the facts would have to resort to surmise, guesswork or speculation. It follows that plaintiff has not sustained the burden of proof resting upon him to show that he fell on the Clarkson premises. This being so, the trial court did not err in setting aside the jury verdict and entering judgment for defendant. Our ruling on this point determines the appeal and makes it unnecessary to pursue further the interesting question as to whether plaintiff (if he fell on the Clarkson premises) was a trespasser, a mere licensee or an invitee and the degree of care which would have then been owed to him.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.