**Faye PEACOCK and Johnny Peacock, Plaintiffs-Appellants,**

v.

**The CITY OF DEXTER, a Municipal Corporation, Defendant-Respondent.**

No. 10206.

Missouri Court of Appeals, Springfield District.

Nov. 23, 1976.

James E. Spain, Briney, Welborn & Spain, Bloomfield, for plaintiffs-appellants.

Manuel Drumm, Drumm & Stamp, Sikeston, for defendant-respondent.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

BILLINGS, Chief Judge.

A Stoddard County jury returned a verdict for the defendant in the plaintiffs' suit for the wrongful death by drowning of their four-year-old son. In this appeal[1] the plaintiffs claim the trial court erred in giving an instruction tendered by the defendant, while the defendant contends the instruction was free of error and also that plaintiffs failed to present a submissible case of negligence. Since we conclude defendant's latter contention is sound, we affirm.

There is no dispute between the parties as to the facts and circumstances which led to the tragic death of plaintiffs' son, Randy. He, his brothers, and his sister resided with their parents on North Locust Street in the city of Dexter. This north-south street intersects with State Route 114 (old Missouri Highway 60), an east-west thoroughfare. The family's residence was located on the east side of the street and in the first block north of the intersection.

Between the sidewalk and street in front of the Peacock house is a ditch which drains surface waters. The ditch is some twenty-four to thirty inches from the edge of the sidewalk nearest the street and is lined with railroad ties to prevent it from washing beneath the sidewalk. The ditch is about four feet in width and has a depth of 28 inches. It runs south to the intersection and then west along State Route 114.

On May 21, 1974, there had been a heavy rain and the ditch was filled with swiftly flowing muddy water. Randy and two of his brothers, ages 10 and 8, were seen in the house by their mother following supper about 6:00 p. m. The oldest of the three boys, Jerry, said the trio went out into the

---

1. Plaintiffs' earlier appeal was dismissed as premature due to judgment not having been entered on the jury's verdict. *Peacock v. City of Dexter*, 530 S.W.2d 272 (Mo.App.1975).

front yard and were throwing sticks into the water and then running to get them before they passed through a culvert. As Jerry was walking back toward the house after chasing a stick, he heard a "splash" and saw Randy being washed through the culvert. The lad was carried by the water through another culvert and his body was recovered four blocks west of the intersection in the roadside ditch along Route 114 in water 3½ to 4 feet in depth.

Plaintiff-mother said she was busy in the kitchen and did not see the three boys leave the house. She said she knew the ditch in front of the house filled with water following heavy rains and had warned her children about playing in it. She was aware the ditch would be dangerous for a child of Randy's age.

A neighbor was sitting on her front porch and saw the three boys playing in their front yard. She said they ran down to the ditch, and "it was just like he [Randy] walked off the bank to go wading, and that's the last I saw of him."

It was plaintiffs' theory that defendant was negligent in maintaining an open ditch so close to the street that children were exposed to the danger of falling into the ditch and that defendant should have known of this danger and guarded the ditch in some manner. In support of this theory, the plaintiffs argue that the defendant had a duty to maintain its streets and sidewalks in a safe condition. They contend that it is negligence "to maintain a ditch in a residential area of a city that fills with water that flows at a swift rate of speed during a rain" and "to maintain an open, fast flowing ditch within one foot of a public sidewalk." We are cited to *Benton v. City of St. Louis*, 217 Mo. 687, 118 S.W. 418 (1909), and *Dutton v. City of Independence*, 227 Mo.App. 275, 50 S.W.2d 161 (1932), as authorities supporting plaintiffs' view. Conversely, the defendant takes the position that it had no duty to guard or barricade the ditch in question and that there was no evidence Randy fell into the ditch as hypothesized in plaintiffs' verdict director.

*Benton v. City of St. Louis*, supra, involved the drowning of a six-year-old child near a public street, but the facts were much different. There was an old, narrow wooden sidewalk along the street. At the point of the accident, it rested elevated on wooden posts several feet high. The boards were loose and the sidewalk tipped toward a large hole (12 feet wide and 5 feet deep) running under the sidewalk and into the street. During heavy rains, the hole filled up with water which would rise up even with the walk. On the day of the drowning, the water rose and caused the wooden sidewalk to float. The court held a jury could find that the long-standing "defects in the sidewalk hard by the treacherous pool" caused the child to slip or step off and drown. 217 Mo. at 694, 118 S.W. at 419.

The case of *Dutton v. City of Independence*, supra, involved the death of a four-year-old child. There, the city built a concrete culvert under an intersection overlaying a stream. The top of the culvert, a flat concrete slab 10–12 feet wide, formed the surface of the street and extended past the edge of the street over into the property of the child's grandfather. The child fell from this part of the culvert to the concrete bottom of the creek below and was killed. The court held the city liable for failure to put up a barrier along the end of the culvert. There was evidence that children often played in the area near the culvert and that a complaint had been made to the city regarding the dangerous unprotected end of the culvert and asking that a railing or guard be placed there.

In *Bagby v. Kansas City*, 338 Mo. 771, 92 S.W.2d 142 (1936), a child (about 10½ years old) was injured while playing on the side of a rock cliff in a city park. A large rock became loosened and rolled down the cliff and struck the child. The court held the city was not negligent, either in failing to provide a warning sign or in failing to remove or secure the loose rock. The court in *Bagby* distinguished the earlier case of *Capp v. City of St. Louis*, 251 Mo. 345, 158 S.W. 616 (banc 1913). In *Capp*, a small stream of water, known as the River Des

Peres, ran through a public park maintained by the city of St. Louis. Years before the accident, the city constructed a storm sewer which drained a large part of the city and entered into the River Des Peres. During heavy rains the waters from the sewer became a swift torrent and over the years washed out the bed of the river and caused a hole to be formed at the junction of the sewer and river. This hole had been filled with water for years and was 8 to 12 feet deep in the center. It was common for children to wade in the riverbed and two young children were found floating in the pool of water, apparently having waded into it not knowing its depth. The court held there was a submissible case of negligence against the city for not guarding or eliminating the pool. In *Bagby*, our supreme court said liability in *Capp* "was based on the theory that the city created an entrapment in a shallow stream by discharging a large amount of surface water from a sewer which created a deep hole in the shallow stream." 338 Mo. at 780, 92 S.W.2d at 147.

The court in *Bagby v. Kansas City*, supra, also distinguished its earlier decision in *Davoren v. Kansas City*, 308 Mo. 513, 273 S.W. 401 (banc 1925). There, in constructing a street, the city built a high fill or dam across a large ravine which had previously served as a drain for surface waters in the residential area. No culvert or outlet was installed and a large pond of water was formed. The city had been warned that the pond constituted a danger to children who played in or on it. The court held the city liable for the deaths of two children who fell through ice on the pond and drowned. The court found that the pond was a dangerous nuisance which the city knew attracted children and thus the city was negligent in not abating it. The pond in *Davoren* served no essential purpose and could have been eliminated.

The case of *Volz v. City of St. Louis*, 326 Mo. 362, 32 S.W.2d 72 (1932), involved the drowning of a young child in a pond in a public park of the city. The child fell through ice on the pond. The city was held not negligent in failing to put a fence or rail around the water. The reasoning of the court was as follows:

"Public parks in cities are constructed and established for the pleasure and recreation of the citizenry at large, and the normal citizen is entitled to have the park maintained to that end. *To keep a child of an age permitted by its parents to wander unattended or to wander accompanied by other immature children from going upon the ice or into the water would require a fence or barrier of such height and inaccessibility as to destroy the symmetry and beauty of the scenery* to which the citizenry is entitled. The propensity of youth to dare where the danger is not seemingly impending is well known. Ordinary fences and barriers are scaled by boys notwithstanding. *It would be impractical for the city to place fences or barriers around every object or place, possibly or imaginably dangerous to youth.* . . . The negligible danger arising from youth drowning in ponds without barriers in public parks must be subordinated to the pleasure and recreation of the people as a whole. We do not think that a city is necessarily negligent because it fails to place a fence or barrier around a pond, either natural or artificial, in a public park, although situations may arise that develop negligence. . . . *The drowning did not result from an unusual or hidden danger, for conditions were known to the boys."* 326 Mo. at 366–367, 32 S.W.2d at 73–74 (emphasis added).

■ We are of the opinion that it would be even more impractical for cities and towns to fence all roadside ditches which become filled with water after heavy rains than it would be to fence ponds in public parks. Also, there was no hidden danger such as the concealed hole in *Capp v. City of St. Louis*, supra, and the condition of the ditch was known to plaintiff parents, who had warned their children about playing in the ditch.

The *Volz* and *Bagby* cases, supra, were relied on by the court in *Taylor v. City of*

*Kansas City*, 361 S.W.2d 797 (Mo. banc 1962). A seven-year-old child was playing ball on the elementary school playground which was adjacent to an unfenced city park. A dry, unfenced concrete wading pool was located in the park near the school playground. While walking backward to get a ball thrown over his head and into the park area, the child stumbled into the pool and was injured. The court held there was no submissible issue of negligence, and said, 361 S.W.2d at 801:

". . . But to hold the city liable under the facts shown in this case would, in effect, make it an insurer of the safety of all children in the park irrespective of how they get hurt, . . ., if an inventive pleader and a sympathetic jury could conceive of a means by which the casualty could have been prevented, however impractical it might be."

In *Williams v. Kansas City, Clay County & St. Joseph Ry. Co.*, 222 Mo.App. 865, 6 S.W.2d 48 (1928), a railroad corporation was held not liable for the drowning of a child in a water hole near a culvert on its right of way. The water hole was not fenced or guarded in any manner.

There are a few other cases in this state holding that under the particular facts the municipality was liable. *Doran v. Kansas City*, 241 Mo.App. 156, 237 S.W.2d 907 (1951) involved a drainage ditch called Brush Creek which ran through a residential area and city park. The bed of the creek was paved with concrete over most of its course and the creek was usually dry or contained only a shallow stream of water. The city knew that children often played or waded in the creek. At one point the concrete pavement of the bed ended and there was a deep hole which would often be filled with muddy water. The muddy water covered part of the concrete and concealed the depth of the hole. The city was aware of this condition but had done nothing about

it. There were no warning signs in the area. Two young children fell into the hole while wading and drowned. The court held there was a submissible case of negligence against the city. The key facts were the hidden danger, the city's knowledge of it, and the practicality of remedying the situation—facts which are missing in the present appeal.

In *Nation v. City of St. Joseph*, 5 S.W.2d 1106 (Mo.App.1928), a young boy drowned in a pool or pond formed by a stream of water in a public park. The city knew young children played near the pond. The court held the city liable for failing to either fence the pond or fill it with dirt. This case has been distinguished [2] and the holding questioned [3] by the supreme court. *Nation* can be explained on the ground that since the stream was shallow except where the pond was formed after heavy rains, there was a hidden danger which the city could easily have eliminated. [4]

In *Van Alst v. Kansas City*, 239 Mo.App. 346, 186 S.W.2d 762 (1945), the city constructed a sewer which followed the bed of a creek and at one point the sewer, together with dirt deposited from its construction, created a dam across a bend in the old creek bed. This prevented surface water which accumulated in the creek from draining out, and a pond was formed. The pond was often used as a swimming hole by boys in the area. Plaintiff's 14 year-old son drowned in the pond and a wrongful death action was brought against the city. The court held the attractive nuisance doctrine applicable. [5] The attractive nuisance doctrine was not raised in the present case and, aside from this, there was no evidence that the drainage ditch in Dexter was a common attraction for children and that the city knew this. *Jensen v. Kansas City*, 181 Mo. App. 359, 168 S.W. 827 (1914), can be similarly distinguished. There, the court held

2. *Taylor v. Kansas City*, 361 S.W.2d 797, 800 (Mo. banc 1962).

3. *Bagby v. Kansas City*, 338 Mo. 771, 780, 92 S.W.2d 142, 147 (1936).

4. This is the explanation given in *Taylor*, supra, note 2, 361 S.W.2d at 800.

5. Recovery was denied on the ground the boy was contributorily negligent in voluntarily diving into the pond.

there was a submissible case of negligence where a five-year-old child drowned in a fountain maintained by the city. The city had knowledge that small children often played on the wall of the fountain.

Here, there was no hidden danger or entrapment. The parents were aware that the ditch filled with water after heavy rains. There was no deep hole or drop-off in the ditch. There was no evidence that children often played near the ditch when it was filled with water or that the city was aware of such fact or had been warned of the possible dangers to children. Furthermore, the drainage ditch served a necessary and useful purpose and, as earlier mentioned, it would be impractical for cities to fence all the drainage ditches they maintain (as opposed to the cases where a pool or pond or hole was formed which could be guarded or eliminated easily).

We are of the opinion and hold that in view of the decisions before referred to and taking the evidence in the most favorable light to plaintiffs, they failed to make a submissible case of negligence against the defendant and the alleged instructional error needs no determination.

The judgment is affirmed.

All concur.